VARNEY *v.* MANCHESTER.

A person is "travelling upon a highway," within the meaning of Gen. St., c. 69, s. 1, when he is making a reasonable use of a highway as a way.
The question whether stopping in a highway for a certain time is such a use, is not ordinarily a question of law.

CASE, for damage happening to a traveller by reason of a defect in a highway. The evidence was, that on Decoration day the plaintiff went to Elm street for the purpose of seeing the procession there forming for the decoration of soldiers' graves ; went down on the west side of the street to the place where the procession was forming; crossed the street to get a better view, and stood near a pile of lumber, looking at the procession as it was forming (his attention being being particularly called to a squad of police formed to head the procession) ; and when he had stood there from three to five minutes, the lumber, on which were a number of persons, fell, and crushed his

foot.  The defendants excepted to the refusal of the court to order a nonsuit.  Verdict for the plaintiff.

*G. Y. Sawyer & Sawyer, Jr.*, for the defendants.

The action is given for damage happening to a traveller while using a highway as such.  *Ball* v. *Winchester*, 32 N. H. 435;  *Griffin* v. *Sanbornton*, 44 N. H. 246.  At the time of the alleged injury of the plaintiff he was using the highway, not for any purpose of a traveller, but as a standpoint from which to witness the procession.  When he had planted himself at the point selected as his post of observation for obtaining a better view, and waited there to see the procession from three to five minutes, he was no longer using the highway as a traveller upon it.  *Hardy* v. *Keene*, 52 N. H. 370, 377.  The liability of towns for injuries occasioned by defects in their highways is commensurate with the duty imposed upon them, and that duty is to maintain them in suitable condition for the public travel as highways for the use of the traveller, not as amphitheatres for the spectators at a public show, nor as trotting parks for the purposes of the race course, nor as playgrounds for children.  *Stickney* v. *Salem*, 3 Allen 374;  *Blodgett* v. *Boston*, 8 Allen 237;  *Richards* v. *Enfield*, 13 Gray 344;  *Gregory* v. *Adams*, 14 Gray 242;  *McDougall* v. *Salem*, 110 Mass. 21;  *Stinson* v. *Gardiner*, 42 Me. 248;  *McCarthy* v. *Portland*, 67 Me. 167.

*Sulloway & Topliff* and *Briggs & Huse*, for the plaintiff.

DOE, C. J.  A person is "travelling upon a highway," within the meaning of Gen. St., c. 69, s. 1, when he is making a reasonable use of a highway as a way.  He need not be on a long journey.  Taking one step from his own door to the sidewalk, and another into his neighbor's house, he is travelling during the moment of his transit on the path laid out for the accommodation of the public.  And, although the use of a highway as a way includes motion from one place to another more or less distant, continuous movement is not necessary.  Such use does not cease with every cessation of locomotion.  A person going for a physician, and meeting him accidentally in the street, may stop for a reasonable time, and at a reasonable time and place, to speak to him, without instantly terminating his rightful use of the way.  And if he expects to meet the physician in the street, and goes for the reasonable and proper purpose of meeting him there, his use of the street is not wrongful on that account.

In *Pearsall* v. *Post*, 20 Wend. 111, 131, COWEN, J., says,—" The relative rights both of owner and passenger in a highway are perfectly understood and familiarly dealt with by the law.  Subject to the right of mere passage, the owner of the soil is still absolute master.  The horseman cannot stop to graze his steed without being a trespasser;  it is only in case of inevitable or at least accidental deten-

tion that he can be excused even in halting for a moment." But this is too great a limitation of the right of passage. A sum not exceeding three dollars is abated from the tax of any inhabitant who constructs and during the year keeps in repair a watering-trough, well supplied with water, sufficiently elevated and easily accessible for horses and carriages, if the selectmen deem the same necessary for the convenience of travellers. Gen. St., c. 53, *s.* 12. At such a trough, or at a brook, travellers may stop for water, though not inevitably or accidentally detained.

As the power of eminent domain is the public power of buying what is necessary for public use, and as a piece of land, including the fee, is not taken by that power when an easement is all the public needs, a highway taken by that power is not a public pasture, but a public way. The grass is a part of the land, and, with the soil and rocks, remains the property of the land-owner, subject to the public right of way. And although a traveller, making a reasonable use of the way as a way, is not liable for grass snatchingly taken, as he is not for mud or dust accidentally carried off by his horse, he commits a tort by grazing his horse on another's land on which he has only a right of way. But mere stopping is not necessarily a tort. It may be a reasonable use of a way as a way. In a crowded thoroughfare, at a railroad crossing, and at his own gate or door, the traveller may be obliged to stop. And as absolute necessity is not the test of his right to go upon the land on which he has a right of way, so it is not the test of his right to stop there. The easement is bought by the public when it is reasonably necessary for the public accommodation. The right, when bought, is the right of reasonably using the land as a way. And whether mere stopping, or stopping for any particular length of time, is such a reasonable use, is generally a question of fact depending upon the traveller's purpose and the circumstances of his case. The court may be required to determine whether there is any evidence upon which a jury can properly find that the traveller was making use of the way as a way, and whether his use was reasonable : but the question, whether stopping a certain time in certain circumstances is such a use, is not ordinarily a question of law. *Babson* v. *Rockport*, 101 Mass. 93 ; *Britton* v. *Cummington*, 107 Mass. 347.

A highway may be laid out as a means of public access to natural scenery, for the accommodation of pleasure-seekers. *Higginson* v. *Nahant*, 11 Allen 530. As was suggested in that case, a right of way over the top of Mt. Washington may be taken by eminent domain. *Petition of Mt. Washington Road Co.*, 35 N. H. 134, 140. And there is no rule of law that a traveller transcends his right of way when he halts on such a road. Nor is there a rule of law, that, while he may stop on the Mt. Washington turnpike to rest, to view the landscape, to greet an acquaintance, or to inspect a procession of travellers, he cannot stop on Elm street in Manchester for the same purpose.

A reasonable use may be made of highways for moving buildings,

unloading carts, and temporarily depositing goods, fuel, and building materials: and what is such a reasonable use is a question of fact. *Graves* v. *Shattuck*, 35 N. H. 257, 264–268 ; *Hall* v. *Brown*, 58 N. H. 93, 95. In *Gregory* v. *Adams*, 14 Gray 242, the question whether driving an elephant over a bridge, part of a highway, was a reasonable use for a travelling showman to make of the bridge, was held to be a question of fact : and there was a disagreement of the jury. In *Macomber* v. *Nichols*, 34 Mich. 212, the plaintiff's horse was frightened by an engine mounted on wheels, moved along the highway by steam. The jury were instructed that any one placing upon the highway a vehicle unusual, and calculated to frighten horses of ordinary gentleness, is liable for all damages resulting therefrom. It was held that this was erroneous, and that the question was one of reasonable use and reasonable care. The engine was used mainly for threshing grain, and was moved from place to place for that purpose by the steam power by which it was operated. The defendant's evidence tended to show that he shut off steam and stopped the engine when the plaintiff's horse was seen approaching. If the horse appeared to be frightened by the moving engine, and reasonable care required the defendant to stop, his stopping was not a wrong.

In *Stinson* v. *City of Gardiner*, 42 Me. 248, the plaintiff, a girl on her way home from school, went upon an elevated sidewalk, stopped, and leaned against a defective railing : the railing gave way, and she fell. The defendants' evidence tended to prove that the plaintiff, having got possession of a bottle from a boy, ran with it, and he pursued her ; she went upon the sidewalk, and was leaning against the railing when he came up, seized the bottle, and tried to pull it away from her ; he let go, and she sallied back against the railing, and it gave way. The judge instructed the jury that the road is to be kept safe for the use of travellers only ; but that the law does not prescribe for what purposes it may be travelled, whether for business, pleasure, work, or play, provided the use is not unlawful or negligent. The plaintiff obtained a verdict, which was set aside on the ground that although all persons have the right to travel upon a highway for pleasure as well as for business, the plaintiff's use of the road for purposes of travel must be regarded as entirely suspended if she was using it as a play-ground and not as a traveller, and the jury should have been instructed, as the defendants requested, that she could not recover, if at the time of the accident she was using the highway as a play-ground and not as a traveller. TENNEY, C. J., delivering the opinion, said,—" If a circus company should appropriate a part of a public highway for the exhibition of their feats in horsemanship, or other acts of agility, entertaining no design to use that part of the way as travellers, could one of that company have any ground for a claim of damages for bodily injuries, or other losses, on account of any defect therein, against the town or city in which the way was located ? When children appropriate a part of the road for their sports, and cease to use it as a way for travel, the town or city through

which the way passes is not responsible for injuries which may be received by any of the children so engaged, although the injuries may take place through a defect in the road." GOODENOW, J., dissented, on the ground that there was no evidence that the plaintiff was not on the sidewalk as a traveller,—no evidence that she was there for the purpose of using the way as a play-ground; "we must expect of children the habits of children, and that they will be mirthful, joyous, and sportive, while regularly on the way as travellers to and from school;" and the jury must have found the plaintiff was a traveller. The decision seems to leave it a question of fact whether the plaintiff, at the time of her fall, had ceased to use the way as a way, and was using it as a play-ground. In the supposed case of the circus, there may be no evidence that the performances of the ring are a viatic use of the way. But there may be a difficulty in maintaining as law the proposition that a sidewalk, so situated as to be naturally and inevitably used for the hygienic purpose of a reasonable frolic of children on their way home from school, cannot be so used without being transformed from a way into a play-ground, or that by the gambols of young animals on their way to pasture their use of the road as a way is abandoned. We see nothing in *Stinson* v. *Gardiner* that can be regarded as authority for a nonsuit in this case.

In *Blodgett* v. *Boston*, 8 Allen 237, the plaintiff, who at the time he was injured was eleven years old, testified that he was playing "old man on the castle," on a plank sidewalk in Washington street, and when another boy came to catch him, he in starting away put one of his feet between the planks, where it got caught, and in trying to lift it out he twisted it and caused the injury. The judge thereupon reserved the question whether the action could be maintained, and the whole court ordered judgment for the defendants, on the ground that the plaintiff was not in the use of the way for a purpose for which the city was bound to keep it in repair. But the application of the decision was carefully limited by the remark,—"We by no means intend to say that a child who receives an injury caused by a defect in a street, while passing over or through it, would be barred of all remedy against a town merely because he was also engaged in some childish sport or amusement. There would exist in such a case the important element that he was actually travelling over the way. But this element is wholly wanting ·in the case at bar. We have here the naked case of an appropriation of a portion of a public street to a use entirely foreign to any design to pass or repass over it for the purpose of travel, within the meaning of the statute. It is to this precise case that we confine the expression of our opinion." It being legally possible to cease moving forward or backward in a street without discontinuing a traveller's use of the street, and it being possible for a child as well as an adult to make a traveller's use of it for recreation, there may be some doubt how the line is to be drawn between the law and the fact in such a case as *Blodgett* v. *Boston*. Of the case of a boy injured while using a portion of the highway solely for the purpose of

enjoying the amusement of coasting, the court there say it would hardly be contended that the town could be held liable.  Perhaps such a case should be considered in connection with the case of the boy's parents injured while using the same portion of the highway solely for the purpose of enjoying the amusement of a sleigh-ride.  In the highway act there is no arbitrary rule of discrimination against the amusements of children, no prohibition of the use of gravitation as a motive power, and no requirement that a person going out to drive for amusement, or for fresh air, and health of body or mind, shall not turn in the road more than once, or shall not go over the same route more than twice.

In *Tighe* v. *Lowell*, 119 Mass. 472, the plaintiff, who was six years old at the time of the accident, testified that she was standing by the side of a ditch dug for a sewer, and fell in ; that she was playing tag with another girl; that she went out from her mother's house, near by, to play with the other girl, and was not going anywhere else.  A verdict, ordered for the defendant, was sustained on the ground that the plaintiff was using the highway as a play-ground.

In *Lyons* v. *Brookline*, 119 Mass. 491, there was evidence that the plaintiff, a child between three and four years old, was permitted by her parents to go out into a highway for the purpose of walking thereon ; that she sat down on the sidewalk, with her feet in the gutter, near some stones placed there by the city to be used as curb-stones ; that in consequence of the acts of other young children playing there, one of the stones, which had been insecurely placed, fell against the plaintiff's legs.   The judge instructed the jury to return a verdict for the defendants if they should find the facts to be as above stated.   A verdict for the defendants was sustained on the ground that the jury, under the instructions given them, had found that the plaintiff was not travelling in the highway, and that her injury was caused by the act of third persons.

In *Hunt* v. *Salem*, 121 Mass. 294, the plaintiff, who was about eight years old at the time of the accident, testified that he had been sent to carry dinner to his father ; that when going home on the side of the street nearest his home, his attention was attracted by some toys in a window on the opposite side of the street; that he crossed the street and stood in front of the window, on a grating that covered a cellar-way in the sidewalk, looking at the toys some four or five minutes, and, in turning to come away, his foot slipped into the grating.   A verdict for the plaintiff, on instructions that the questions whether the plaintiff was a traveller, and was using due care, were questions of fact, was sustained, " the injury having happened while the plaintiff was moving onward, and all the attending circumstances being disclosed by his testimony."

*Stickney* v. *Salem*, 3 Allen 374, was an action brought by the administrator of one S.   There was evidence that Hardy street was a highway leading to the sea.   At its termination there was a sea-wall about eight feet high, and a wooden fence that had become defective.

A witness called by the plaintiff testified that S., who was about seventy-three years old, and lived on Hardy street, walked with him down to the fence for the purpose of showing him the harbor and surrounding objects, and stood for ten or fifteen minutes near the fence, pointing out to him various objects in and around the city and harbor, and engaged in conversation generally; S. then turned round, folded his arms, and leaned against the top rail of the fence lightly, and it gave way, and S. fell backwards over the wall on to the beach. The reasons given for setting aside the plaintiff's verdict were, that, taking the statement of the plaintiff's witness to be true, no cause of action was proved; his testimony showed that S. was not using the railing for a purpose for which the city was bound to erect and maintain it; if a person, without fault, is forced against a railing, or takes hold of it to aid his passage, or falls against it by accident, or has occasion to use it any way in furtherance of the lawful and reasonable exercise of his right as a traveller, and by reason of any defect it gives way and causes an injury, a town would be liable; but a town is not bound to erect and maintain railings for persons to sit upon or lean against; they are not intended to be used for the convenience of those who seek a place of rest while they stop in the highway to lounge, or to recover from fatigue, or to engage in conversation; if a person uses them for such purposes, he does it at his own risk; if he ties his horse to a railing, and in consequence of its being decayed the horse escapes, the town is not liable; as it appeared that S. leaned against the railing while engaged in conversation generally with his friend, and there was no evidence of any necessity or exigency which required him to use the railing at all, there was no room for an inference that he was in the exercise of a lawful right.

A person having been injured while taking a short walk in the street on Sunday, for gentle exercise in the open air, the town contended that if he was a traveller he could not recover because he was violating the Sunday law, and if he was not a traveller he had no right of action upon the highway law. In the opinion of the court he was not a traveller within the meaning of the Sunday law; and he recovered damages as a traveller within the meaning of the highway law. *Hamilton* v. *Boston*, 14 Allen 475; *O'Connell* v. *Lewiston*, 65 Me. 34. Had the plaintiff allowed his children to take gentle exercise in the open air, with their sleds, in the same street, on the same day, and for the same length of time, whatever sabbatical distinctions might be found in the laws of morals or the customs of the community, it would not be apparent by what rule of liberal or strict interpretation, applied to the highway act, the way, used as a way by the father, was not so used by the children.

In *McCarthy* v. *Portland*, 67 Me. 167, there was evidence tending to show that the plaintiff was racing his horse, and matching it for speed, at the time its leg was broken. The jury were instructed that if a man starts upon a race, having that object in view, and not any legitimate purpose of travel, he ceases, as against the town, to have

the rights of a traveller upon the highway : his intention to race, accompanied by the fact that he has actually started upon the race, prevents his recovery of damages ; it matters not that he starts at a walk ; if he is in the act of racing, the speed at which he is driving is immaterial ; his use of the highway for the purpose of racing is not legitimate.  These instructions were held to be correct, the views of the court being that the plaintiff, to maintain his action, must have been travelling for some purpose for which streets are required to be constructed and kept in repair : a boy may be within the protection of the statute while running upon a street, if going to or from school, but not if participating in a game of ball ; he might, perhaps, be a traveller, under some circumstances, while sliding down hill on his way to school, but not if merely engaged in sliding as a pastime and sport ; a horse, driven or led upon the street, may be the horse of a traveller, in the sense of the statute, but if an estray, he would not be ; racing prevents the plaintiff recovering, not because racing horses is unlawful, but because it is a purpose for which the streets were not designed to be used ; playing ball and sliding down hill are not unlawful exercises and games, but the streets are not proper places for such recreations, or for racing-grounds ; if the plaintiff had been on his way to his place of business, or home, or had been out riding for pleasure and recreation, and while so going had speeded his horse to keep up with or to pass other teams on the road, he might still have been a traveller within the protection of the statute ; in such case the racing might be merely an incidental or casual thing ; but when a person uses a highway wholly for the purpose of horse-racing, as he would use a race-course, he has not the rights of a traveller as against the town.  In the practical application of this doctrine at a trial by court and jury, it is necessary to observe the line between law and fact.  And, mere racing being lawful, and speed being immaterial on the question of law, it may not be easy to make a distinction of law between the case of a person who, while out driving for recreation, incidentally, but with a complete racing purpose, puts his horse to his speed to overtake or pass other teams, and the case of a person who uses the highway wholly for the purpose of racing.  That the former uses the road for a purpose for which it was constructed, and the latter does not, may not be a matter of law.  There may be in such cases a question of reasonable use, which may be a question of fact, on which the court can be required to decide whether there is any evidence on which it can properly be found that the use was reasonable.  There being no illegal betting, and mere racing being lawful, and the speed immaterial on the question of law, it would seem that, whatever differences of fact may affect the conclusion of fact, the law is the same whether the match is for running or walking, whether the race is to the swiftest or to the slowest, and whether the contest is one of speed or style ; and that the point at which such diversions pass the bounds of legitimate recreation as a proper use of a highway is to be found by solving the question of reasonable use as a question of fact.

In the present case, the formation of a procession for the decoration of soldiers' graves was not unlawful. In the absence of evidence showing its use of the street for forming, waiting, or marching, was unreasonable, its use may be presumed, as a matter of fact, to have been reasonable; and the plaintiff was not in fault as a spectator, approving and abetting a wrongful act. He was not an accomplice in any violation of law. As he passed along the street, he could rightfully look at the procession; and it is not matter of law that he had no right, as a traveller, to pass along for the purpose of looking at it. Nor is it matter of law that he could not stop an instant for that purpose, as a traveller. He had been standing in one place for that purpose from three to five minutes, when the lumber fell upon him. The law does not prescribe how long he could stand there without ceasing to use the way as a way. The question is one of reasonable use; and that is a question for the jury, if there is any evidence on which they could properly find the use was reasonable. We think there is such evidence; and the motion for a nonsuit was properly denied. *Hardy* v. *Keene*, 52 N. H. 370, 376, 377; *Cummings* v. *Center Harbor*, 57 N. H. 17.

*Judgment on the verdict.*

STANLEY and CLARK, JJ., did not sit.