Hillsborough, } No. 3166.
June 20, 1940. }

STATE *v.* WILLIS COX.

SAME *v.* WALTER CHAPLINSKY.

SAME *v.* JOHN KONIDES.

SAME *v.* ARVID E. MOODY.

SAME *v.* OLIVA PAQUETTE.

*Thomas P. Cheney*, Attorney-General, *Frank R. Kenison*, Assistant Attorney-General, and *J. Vincent Broderick*, County Solicitor (*Mr. Kenison* orally), for the State.

*Charles D. Barnard, Charles H. Barnard, Joseph F. Rutherford* (of New York) and *Hayden Covington* (of New York) (*Mr. Covington* orally), for the defendants.

ALLEN, C. J.  The statute (P. L., *c.* 145, *s.* 2) upon which the defendants were found guilty is this: "No theatrical or dramatic representation shall be performed or exhibited, and no parade or procession upon any public street or way, and no open-air public meeting upon any ground abutting thereon, shall be permitted, unless a special license therefor shall first be obtained from the selectmen of the town, or from a licensing committee for cities hereinafter provided for."

A succeeding section (3) provides that a city may create a licensing board to be appointed by the city government, to "have delegated powers to investigate and decide the question of granting licenses" and to "grant revocable blanket licenses to fraternal and other like

organizations, to theatres and to undertakers." Another section (4) requires all special licenses to be in writing and "to specify the day and hour of the permit to perform or exhibit, or of such parade, procession or open-air public meeting," and establishes a range of fees from a nominal amount to $300. The section ensuing (5) prescribes the penalty for violation of the statute.

The contention that the defendants were not guilty under the terms of the statute has no merit. As the complaints charged, they "participated in a certain parade or procession." A succession of persons substantial in number walked in formal march with signs and placards. This was a parade or procession, such as is required by the statute to be licensed. It was a march in formation, and its advertising and informatory purpose did not make it otherwise. Its single-file order did not destroy its character as a procession, nor did its purpose to publish information take it out of the purview of the statute. Each group was an organized unit under leadership and direction. It is immaterial that its tactics were few and simple. It is enough that it proceeded in ordered and close file as a collective body of persons on the city streets. Whether it could be called an assembly, being in motion rather than stationary, is also immaterial. If it might be, it remained a parade or procession, as the statute employs the words. Clearly, the defendants took part in a parade or procession without a license therefor.

The issue whether the act which the defendants violated is void under the State Constitution may be readily and briefly stated. The State Bill of Rights (Constn., Pt. I, *Art.* 22) has this provision: "The *liberty of the press* is essential to the security of freedom in a state: It ought, therefore to be inviolably preserved." The right to worship God in any manner is also held to be inalienable, provided the public peace, or others in their religious worship, are not *disturbed. Ib.,* Pt. I, *Art.* 5. Whether these articles serve to render the act a nullity, or at least inapplicable to the facts of the case, is to be determined. Decision turns upon the force and effect of another article of the Bill of Rights (31) reading as follows: "The legislature shall assemble for the redress of public grievances, and for making such laws as the public good may require." Another provision of the Constitution (Const., Pt. II, *Art.* 5) confirms the grant of power to the legislature by vesting it with "full power and authority . . . to ordain . . . all manner of wholesome and reasonable . . . laws . . . directions and instructions, either with penalties, or without, so as the same be not repugnant or contrary to this constitution, as they may

judge for the benefit and welfare of this state, and for the governing and ordering thereof, and of the subjects of the same, . . .". The defendants contend that the legislature has overstepped itself in enacting the law as an exercise of the protective power.

While highways are public, they are subject to public control. The public have no vested rights to their use, and it follows that the use is such as the State permits, and that any conditions of permission are proper, provided they are not forbidden by the Constitution.

". . . the operation of an automobile upon the public highways is not a right but only a privilege . . . . (*Comm.* v. *Kingsbury*, 199 Mass. 542); and that what the state may withhold, it may grant upon condition." *State* v. *Sterrin*, 78 N. H. 220, 222, cited in *Opinion of the Justices*, 81 N. H. 566, 567, 568. "Classification between those who may and who may not have the privilege of highway use of motor vehicles must be reasonable, but the privilege itself need not be:" *Rosenblum* v. *Griffin*, 89 N. H. 314, 319.

The use is for travel, and the travel includes its incidents. The highway "easement is bought by the public when it is reasonably necessary for the public accommodation. The right, when bought, is the right of reasonably using the land as a way." *Varney* v. *Manchester*, 58 N. H. 430, 432. "Travelers upon public highways have the right to do all acts reasonably incident to 'a viatic use of the way'." *Lydston* v. *Company*, 75 N. H. 23.

While travel may be with any end in view, a highway itself may be used only for the travel. The State may provide measures to prevent its use for other purposes, and to secure its use for travel only. It may regulate travel, and, since the right to travel is a privilege, may forbid any particular form of travel, or may permit it under such terms as it may impose, within constitutional bounds. The State is in the position of a landowner in control of the use of a highway, except that discrimination must be fair and that no essential rights be impaired. At its will it may shut off a highway from use and it may limit the travel uses to certain forms of use. "The state has authority to make regulations as to the time, mode, and circumstances under which parties shall assert, enjoy, or exercise their rights [of highway use] without coming in conflict with any of those constitutional principles which are established for the protection of private rights and private property." *State* v. *White*, 64 N. H. 48, 50, in which case a statute forbidding drum beating in the compact part of a town was held valid and applicable to the defendants who beat a drum "in accordance with their sense of religious duty, and

in worshipping God according to the dictates of their own consciences," and without "disturbing the public peace or the religious worship of others." "A reasonable measure of prevention to avoid disturbance is not an infringement of constitutional rights." *Ib.,* 50. The permission of highway use must not be upon a condition restricting or abridging freedom of speech or writing, but impositions of conditions respecting the freedom are valid if they reasonably serve to prevent any substantial disturbance which is an interference of normal travel.

Undoubtedly the right to travel imparts the right of communication from one while a traveler to others, and travel may be by persons congregated in a group; but while the reasonable incidents of travel are a part of it, the incidents do not themselves create or imply the right to travel as flowing from them. The right of speech is an incident of the right of highway travel, but the right of highway travel is not inherent in the right of speech.

In analysis of the statute under consideration, the normal and well established rules of construction with reference to constitutional validity are to be employed. It is assumed that the legislature intended to enact no invalid laws. It follows that when a law is capable of two constructions, one giving, and the other not giving, constitutional effect to it, the construction favoring validity is adopted. It is only when the language and terms of the act do not reasonably permit such a construction that the act is held unconstitutional. "Where a statute is fairly susceptible of two interpretations, one rendering it constitutional and one not, that construction will ordinarily be adopted which will uphold its constitutionality. The presumption is that the legislature intended to keep within the limits of both the federal and the state constitutions, and to restrict the operation of its enactments to cases where they will have effect consistently therewith." *Haselton* v. *Stage Lines,* 82 N. H. 327, 329. ". . . when a statute, unsustainable in its literal terms, is valid in some of its applications but not in others, it is to be read as though the latter were excepted from its operation." *Woolf* v. *Fuller,* 87 N. H. 64, 69, and cases cited. "When a statute may constitutionally operate in certain cases, but cannot in others which it in terms embraces, it will be upheld, unless evidently intended to conflict with the constitution, and construed not to apply to the latter class of cases, which 'are as fully and effectually excepted by necessary implication, as if the statute had contained an express proviso that it should not extend or apply to such cases'. *Opinion of the Justices,*

41 N. H. 555; *Kennett's Petition*, 24 N. H. 141." *Cheshire &c. Co.* v. *State*, 63 N. H. 167, 169.

While "words, provisions or modifications" may not at all events be read into a law to the end that it may be clothed with constitutional validity (*State* v. *Gerry*, 68 N. H. 495, 503), yet when the language used fairly admits of a construction which endows the law with validity, that construction will be adopted in preference to an opposing construction. Not to read in what the language implies is to amend or repeal. And judicial disregard of the express meaning is equally, if not more, serious as an attempt to legislate. Certainly a stated bestowal of "delegated power" is one of subsisting power, only, with no attempt to add thereto or to substitute therefor a power not delegable because not possessed. A grant expressed to be of only what may be granted cannot purport, in addition or substitution, a grant beyond power to grant.

In application of these well settled principles of construction to the case here, if the clause of the act requiring a license for all open-air public meetings upon land contiguous to a highway is invalid, the invalidity is isolated and ineffective to nullify the act in respect to its requirements in other situations designated by it.

Also, the act is implicit in its requirement that the licensing authority act reasonably in granting or denying licenses, and with reference to the object of public order on the public ways. If it does not in express terms "make comfort or convenience in the use of streets . . . the standard of official action" (*Hague* v. *Committee* &c., 307 U. S. 496, 516), the necessary inference is that it does, based upon the presumption in favor of the validity of legislation as reënforced by the express provision of the act bestowing "delegated powers" upon the authority, as a grant intended to be only of due legislative power which may properly be delegated. The discretion thus vested in the authority is limited in its exercise by the bounds of reason, in uniformity of method of treatment upon the facts of each application, free from improper or inappropriate considerations and from unfair discrimination. A systematic, consistent and just order of treatment, with reference to the convenience of public use of the highways, is the statutory mandate. The licensing authority has no delegation of power in excess of that which the legislature granting the power has and the legislature attempted to delegate no power it did not possess.

The delegation of power is sustainable as one in connection with municipal government. That the licensing authority may be the local tribunal to administer the act and, as incidental to the adminis-

tration, prescribe such rules and regulations for its due enforcement as it might think proper to adopt, rather than the governing councils of the city, is immaterial. The legislature's control over municipal corporations in such respect is undoubted. *Amyot* v. *Caron*, 88 N. H. 394.

The regulation in respect to license fees is not unreasonable. The range is from $300 to a nominal amount. The act is construed to require a reasonable fixing of the amount of the fee. The charge for a circus parade or a celebration procession of length, each drawing crowds of observers, would take into account the greater public expense of policing the spectacle, compared with the slight expense of a less expansive and attractive parade or procession, to which the charge would be adjusted. The fee is not a revenue tax, but one to meet the expense incident to the administration of the act and to the maintenance of public order in the matter licensed.

Application for a permit gives the public authorities notice in advance of any parade or procession for which license may be granted, thus giving opportunity for its proper policing. And the license, in fixing the time and place of a parade or procession, serves to prevent confusion by overlapping parades or processions, to secure convenient use of the streets by other travelers, and to minimize the risk of disorder.

After all, the difference between a circus parade and the defendants' marching would seem to be only of degree, in respect to free speech and writing. The circus parade advertises its show to follow, with barkers using loudspeakers to announce the features of the show. The "information march" of the defendants was less colorful, but the essential purpose of gaining hearers or readers was the same. The difference between the objective of material profit and the exercise of religious freedom is of constitutional consequence, but the difference is observed in the requirements of the terms of the act which are necessarily implied.

In considering the case in the light of these views, it is to be borne in mind that no claim is made of any non-compliance with the act by any governmental agency. The defendants admit its non-observance by them, but say that they have not committed an offense against the State, since the enforcement of the act would violate the Constitution. Their sole position is that the act is a nullity because it defies the constitutional guaranty of individual freedom in respect to their right to march in the manner they did and for the purpose they had.

It is held that the act is a due exercise of the police power under the State Constitution. The State's control over its highways entitles it to regulate their use for travel. Special uses for whatever purposes may be permitted upon such reasonable restrictions as may be prescribed and as are not unfairly discriminatory. The privilege of highway use for travel is not absolute. Maintenance of order, avoidance of congestion, and adjustment of different kinds of travel, are proper objects of legislative consideration in the regulation of use.

It is thought significant that the act prescribes no measures for controlling or suppressing the publication on the highways of facts and opinions, either by speech or by writing. Communication by the distribution of literature or by the display of placards and signs is in no respect regulated by it. The regulation, in respect to highways, is only of parades and processions in their generality. Freedom of publication by speech or writing is under no restraint. The act is applicable only to organized formations of persons using the highways. The defendants separately, or collectively in groups not constituting a parade or procession, are under no contemplation of the act. At most, the parade or procession was a dramatization of their enterprise, designed to make it spectacular and thus attract attention. No audience to hear any speakers was sought, since no speaking was planned. It apparently was thought that the literature would be more noticed and impressive by a striking manner of its publication, and the time and place chosen were designed to have a large number of readers encountered. The interference with liberty of speech and writing seems slight. The distribution of pamphlets and folders by the groups traveling in unorganized fashion would have had as large a circulation, and parades and signs carried by members of the groups not in marching formation would have been as conspicuous, as published by them while in parade or procession. In respect to the placards and signs, some only advertised a lecture to be given at a future date. Part of the others were concededly not in good taste. If short of blasphemy, the motto or slogan that religion is a snare and a racket was an offense to compelled readers, whose willingness to read was not consulted. Freedom of speech is not understood to go so far as to require any hearers to listen, or of writing as to force it to be read by those confronted with it. The right to worship is not a right to disturb others in their worship, and the right to free speech and writing is not one to force speech or writing on an unwilling audience or readers. It is not unreasonable to say that the sentiment displayed had a provocative tendency to a disturbance

of the peace in view of the manner, place and time of its publication.

The courts must uphold the regulations if they are within the confines of reasonableness. Conceding that a highway use in furtherance of divine worship or to advertise and publish, by speech or writing, one's thoughts and views may be less reasonably subjected to control than a use for other reasons, it is not considered reasonable to hold that such special uses are subject to no control or that other highway travelers have only subordinate rights to such a special use. The public good for which legislation may be enacted is the good of all, and the State Constitution recognizes no favored classes. Freedom to worship God, of speech, and of the press, is not abridged by the act, so far as the State Constitution protects that freedom. An ordered freedom is all that the guaranty of individual rights secures. Maintenance of order neither abridges nor denies freedom.

The defendants had a right, under the act, to a license to march when, where and as they did, if after a required investigation it was found that the convenience of the public in the use of the streets would not thereby be unduly disturbed, upon such conditions or changes in time, place and manner as would avoid disturbance. They made no application for a license, and hence may not say that any right was denied them.

The granting or withholding of licenses is of an administrative character, to depend upon such tests of legislation or administrative regulations conformable to the legislation and in aid of enforcement, as are employed to find if the needs of public convenience are met and satisfied; if the public convenience is not subjected to undue disturbance, the license must issue.

The measure of control fixed by the act is permissible in the public interest without invasion of the individual rights, and as a due exercise of legislative powers granted by the State Constitution, the act is sustained. The result would be no different if the excluded evidence had been received as explanatory of the reasons entertained by the defendants for engaging in the parade or procession and for their disregard of the act. A religious doctrine that divine law should be obeyed rather than man's law when the two conflict may be entitled to statement but not to observance.

The question of the validity of the act under the Federal Constitution is more difficult. Recent decisions of the United States Supreme Court (*Lovell* v. *Griffin*, 303 U. S. 444; *Hague* v. *Committee* &c., 307 U. S. 496; *Schneider* v. *State*, 308 U. S. 147; *Thornhill* v. *Alabama*, 310 U. S. 88; *Carlson* v. *California*, 310 U. S. 106, 657; *Cant-*

*well* v. *Connecticut*, 310 U. S. 296, are of pertinent bearing. In all of them the protective power was held improperly exerted, and the question arises whether the special features of the case here are sufficiently in contrast and distinction from them to require a conclusion of a due exercise of the power. "And so, as cases arise, the delicate and difficult task falls upon the courts to weigh the circumstances and to appraise the substantiality of the reasons advanced in support of the regulation of the free enjoyment of the rights." *Schneider* v. *State, supra.* "As in other cases where a broad distinction is admitted, it ultimately becomes necessary to draw a line, and the determination of the precise place of that line in nice cases always seems somewhat technical, but still the line must be drawn." *Ellis* v. *United States*, 206 U. S. 246, 260.

For the state courts the difficulty is enhanced by the uncertainty of the construction which may be placed upon the act by the federal courts. The local construction by the state court of last resort will receive by them "careful and respectful consideration" (*Coombes* v. *Getz*, 285 U. S. 434, 441) and "Great weight" (*Higginbotham* v. *Baton Rouge*, 306 U. S. 535, 539), if the rule in cases presenting the issue of a violation of the article in the Federal Constitution forbidding the impairment of contract obligations is followed in cases dependent for decision upon individual rights protected by that instrument. But the local construction has no compelling authority, and forecast and prediction of the federal construction seem in some aspects an anomalous employment of the judicial function. However, the requirement to forecast the federal construction subsists. The forecast is in effect and substance a judicial declaration of the federal law, subject to federal review. And the local conclusion is to be accorded consideration of weight as authority, although it may not be controlling. In reaching their conclusion the state courts may not assume that their own construction of the local law will not be followed.

Approaching the question from this standpoint, it is thought that there are real and substantial differences existing between the case here and those of recent decision as above cited and relieving the act here under examination from the ban of the federal Constitution, at least as to the offense charged against the defendants. The language of the statute discloses no purpose to impose a "previous restraint" upon freedom of the press or of speech as in *Lovell* v. *Griffin*; *Schneider* v. *State; Thornhill* v. *Alabama*, and *Carlson* v. *California, supra*, nor to hamper freedom of assembly as in *Hague* v. *Committee*,

*&c., supra.* No censorship of comments on matters of public concern, to which reference is made in the *Thornhill* case, is authorized or threatened and *a fortiori* no censorship of religion is contemplated as in *Cantwell* v. *Connecticut, supra.* Neither is there any basis in the present case for a claim of administrative discrimination against these defendants or the religious group of which they are members by the officers charged with the enforcement of the act, analogous to that which was found to exist in the *Hague* case, *supra.*

In essential aspects the federal guaranties of freedom of speech, and of the press are the same as those of the State. The rights guaranteed are inviolable and may not be abridged. The federal cases are thought to point out an emphasis for them under the Federal Constitution in some superiority of merit and importance over other guaranties, with the result of the need of closer scrutiny in any attempt to subject them to the exercise of the protective power. But it is understood that the protective power may be employed for their security and furtherance; and that to promote their function and operation regulation to coördinate them with relations and conditions which they may encounter may be justified. If the regulation is in part or altogether for some other objective of public concern, it is not invalid if freedom of speech or of the press is not thereby abridged. It may provide for a due and orderly manner of enjoyment. A license to permit its enjoyment may not be required as a form of censorship, but a license to permit its enjoyment in fair adjustment with the enjoyment of other relations and conditions is not understood to be under the ban of the federal Constitution. How far the right to freedom of speech spells the right to congregate on the public highways for oral communication does not here seem to require answer. The defendants' conduct was wholly in distributing and displaying matter to be read, and they had no objective of oral address and being heard. And if a parade or procession is to be regarded as an assembly in motion, the right to conduct or engage in it is "not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order." *Hague* v. *Committee &c., supra,* 516.

Granting that the federal guaranty of freedom of speech and writing demands its recognition as an incident of the right of highway use, none of the federal cases cited deny the right of reasonable regulation of the exercise of the guaranteed right when it is enjoyed by persons while upon the highways. In the *Lovell* case a distribution of writings was attempted to be placed under control in arbitrary

discretion, without reference to "the maintenance of public order or as involving disorderly conduct, the molestation of the inhabitants, or the misuse or littering of the streets." *Lovell* v. *Griffin, supra,* 451.

"Conscientious scruples have not, in the course of the long struggle for religious toleration, relieved the individual from obedience to a general law not aimed at the promotion or restriction of religious beliefs." *Minersville School District* v. *Gobitis,* 310 U. S. 586. It would seem a play of imagination to find in the statute any purpose to restrain the freedom of religion, or its exercise through speech or writing.

It is said in some of the cases that an act or ordinance drawn more narrowly would be a valid exercise of the protective power, without abridging the guaranties in question. It is thought that the act here attacked and as locally construed permits no abridgment of the guaranties. Enforcement of the act according to its requirements as found to be contained in it would leave no play or room for the exercise of a too wide discretion. If in enforcement the requirements were not observed, the action would be arbitrary in the particular case. But enforcement of a law is administrative in character, and improper enforcement is disobedience of the law, which, if it makes conduct invalid, does not invalidate the law. If the act in question stated in express and explicit terms the requirements held to be inherent in it, it is not perceived how it would imperil any rights of speech, writing or worship. The discretion delegated has no wider range than the legislature itself might exercise, and in the nature of things, as a practical necessity, the grant or denial of a license must rest upon decision arrived at with the employment of some discretion. The requirements of comfortable and convenient public travel in a particular case are not determinable by formula, or, for each case, in advance of presentation of its facts, but by discretionary adjustment within the mandates defining permissible considerations.

It is not thought to be of orderly propriety to assume, by extended analysis, to state the exact and precise limits and lines fixed by the federal cases between regulation and invasion. The circumstances of a particular case are factors bearing on the side of the line it falls. It is thought that the local act as analysed in application to the State Constitution does not conflict with the federal Constitution as interpreted by the federal courts.

Holding, as is necessary, in the absence of a federal construction of the act, that it is to have the same construction in connection with the Federal Constitution as in connection with the State Bill of

Rights, the act is considered valid under the federal as well as under the State Constitution.

*Exceptions overruled.*

All concurred.