The following resolution adopted by the House of Representatives at the present session of the General Court on February 18 was received February 20, 1947:
"Whereas, There is pending before the House, House Bill No. 193, An act relating to the power of cities to install parking meters; and
"Whereas, There have arisen certain questions as to the constitutionality and legal effect of this proposed legislation;
"Resolved, That the Justices of the Supreme Court be respectfully requested to give their opinion upon the following questions of law:
"1. Is House Bill No. 193 constitutional?
"2. May fees be charged by cities and towns through the installation of parking meters, in excess of the cost of purchase, maintenance and policing such meters?
"3. May such excess revenue be devoted to the purposes prescribed in section 2 of the bill, including use on streets on which meters are not located?
"4. Does the installation of parking meters impose such an additional burden or restriction on the underlying fee of the abutting owner on the street front that some provision must be made in this bill for further compensation to such owner for an additional taking of his property?
"5. If the answer to question 4 is in the affirmative, may the General Court constitutionally dispense with the requirement of compensation by an added provision to the bill declaring that the in installation and operation of parking meters is recognized as a public purpose and by defining the operation of such meters as within the terms of existing highway easements?
"Further Resolved, That the Speaker transmit a copy of these Resolutions and of House Bill No. 193 to the (Clerk of the Supreme Court for consideration by the Court."
The following answer was returned:
To the House of Representatives:
The undersigned Justices of the Supreme Court make the following answers to the inquiries contained in your Resolution of February 20, 1947:
1. "Is House Bill No. 193 constitutional?"
This bill takes the form of an enabling act by which cities are authorized to install parking meters on any street and to establish *Page 503 
reasonable charges for parking to be paid through such meters. We, therefore, construe this inquiry as a request for advice upon the general question of the constitutionality of laws authorizing the installation and use of parking meters, without regard to the incidental questions which may arise under particular enactments. Upon this question there is some difference of opinion among the courts which have had occasion to consider it, but the great weight of authority appears to sustain the validity of such enactments, and we consider the reasoning of the majority in such cases as Opinion of the Justices, 297 Mass. 559,, and Cassidy v. Waterbury,130 Conn. 237, to be of convincing weight.
The control which the State may exercise over the use of its highways is practically unlimited. Ever since the case of State v. Sterrin in 1916, it has been the established law of this State "that the operation of an automobile upon the public highways is not a right but only a privilege which the State may grant or withhold at pleasure . . . and that what the State may withhold, it may grant upon condition." State v. Sterrin,78 N.H. 220, 222. This principle has been repeatedly restated and reaffirmed in succeeding cases. Opinion of the Justices, 81 N.H. 552; Tirrell v. Johnston, 86 N.H. 530; Rosenblum v. Griffin, 89 N.H. 314, 319; State v. Cox, 91 N.H. 137, 141; Continental Insurance Co. v. Charest,91 N.H. 378, 381; St. Regis Paper Co. v. Board, 92 N.H. 164, 172. In Continental Insurance Co. v. Charest, supra, the rule was stated as follows: "Motor vehicle use of its highways is a privilege which may be granted on such terms and conditions as the State at its pleasure may offer regardless of their reasonableness if equality in the bestowal of the privilege is observed. The exercise of this power over highways may properly be delegated to the municipalities in which they are located, as in City of Buffalo v. Stevenson, 207 N.Y. 258, 268; Adams v. Landry,93 N.H. 74, 75; State v. Langley, 92 N.H. 136, 138. The use of parking meters as an aid to the exercise of the power to regulate and control traffic is generally recognized. It may properly be authorized by the State as proposed in House Bill No. 193.
 2. "May fees be charged by cities and towns through the installation of parking meters in excess of the cost of purchase, maintenance and policing such meters?"
It has been held in many cases that the fees to be charged through the operation of parking meters must be limited to the cost of purchase, maintenance and policing of such meters, but even under this rule it is plain that mathematical exactness is not a constitutional *Page 504 
requirement. "The power to regulate the use of the streets is a delegation of the police power of the state government and whatever reasonably tends to make regulation effective is a proper exercise of that power. It justifies the charge of a fee and the imposition of the penalty, and the regulative measure is not invalid because, incidentally, the city's receipts of money are increased. The distinction between the taxing power and the police power will be found in the purpose for which the particular power is exercised." City of Buffalo v. Stevenson, supra, 263. If the fees charged approximate the cost of purchase, maintenance and policing such meters, a slight excess or deficiency in reference to actual cost of meters and their operation will not under any view of the law affect the validity of the act or ordinance by which they are established.
The amount of the fees which may be charged by the operation of such meters is not necessarily limited by this principle however. "The proposed act is designed to regulate the use of public highways. It relates to a matter over which the Legislature has full power subject only to the limitation of reasonableness and equality." Opinion of the Justices,81 N.H. 566, 567. One object of parking regulations may be to reduce the number of cars seeking parking accommodations at a particular time and place, and the regulation which seeks to accomplish this result through the imposition of a fee in excess of the cost of meters and their operation would not be invalid. Consequently a fee may be fixed at a point where some parking will be discouraged without violating the "limitation of reasonableness and equality." Your second question is accordingly answered in the affirmative.
 3. "May such excess revenue be devoted to the purposes prescribed in Section 2 of the bill, including use on the streets on which meters are not located?"
The answer to this question is to be found in article 6a of the constitution which was adopted in 1938 and which reads in part as follows: "All revenue in excess of the necessary cost of collection and administration accruing to the state from registration fees, operators' licenses, gasoline road tolls or any other special charges or taxes with respect to the question of motor vehicles or the sale or consumption of motor vehicle fuels shall be appropriated and used exclusively for the construction, reconstruction and maintenance of public highways within this state . . ." Although this provision by its terms applies only to "revenue . . . accruing to the state," we think it plain that it applies equally to any revenue accruing to municipalities by virtue *Page 505 
of the delegation to them of the state's authority to regulate the use of highways. Any excess revenue derived from the operation of parking meters will clearly be a special charge "with respect to the operation of motor vehicles" and as such, comes squarely within the term of article 6a. Section 2 of the bill reads as follows: "2. The revenue derived from the use of such meters may be expended to maintain and improve streets and highways and to acquire, construct, improve, maintain and manage public parking areas." This provision is clearly within the general purpose of article 6a, which is to restrict money derived from the regulation of motor vehicles to highway purposes. The only possible doubt arises from that portion of section 2 which authorizes the use of funds derived from parking meters to "acquire, construct, improve, maintain and manage public parking areas." The obvious purpose and effect of the establishing of such parking areas is to remove parked cars from the highways, and we are clearly of the opinion that this is a highway purpose within the meaning of article 6a. Your third question is accordingly answered in the affirmative.
 4. "Does the installation of parking meters impose such an additional burden or restriction on the underlying fee of abutting owners on the street front that some provision should be made in this bill for further compensation to such owners for an additional taking of his property?"
Parking is obviously an incident of modern highway travel and the owners of land abutting upon a highway cannot prevent or control it. It is well settled that the right to use a public highway includes the right to use it in all the modes now customarily in use in the locality and others which may arise with the natural development of means of transportation. Blake v. Hickey, 93 N.H. 318, 321; State v. Scott, 82 N.H. 278, 279; Richmond v. Bethlehem, 79 N.H. 78, 81. Any such use must, therefore, be held to be within the original purpose for which highways were taken and laid out and it must be assumed that compensation for such use was included in the damages awarded at the time of the original taking. "The highway `easement is bought by the public when it is reasonably necessary for the public accommodation. The right, when bought, is the right of reasonably using the land as a way.' Varney v. Manchester, 58 N.H. 430, 432. `Travelers upon public highways have the right to do all acts reasonably incident to "a viatic use of the way."' Lydston v. Company, 75 N.H. 23." State v. Cox,91 N.H. 137, 141. Your fourth question is, therefore, answered in the negative. *Page 506 
5. The answer to the fifth question is unnecessary in view of the answer to question 4.
 OLIVER W. BRANCH. FRANCIS W. JOHNSTON. FRANK R. KENISON. LAURENCE I. DUNCAN. AMOS N. BLANDIN, JR.
March 11, 1947.