Rockingham
No. 2012-081

KEVIN P. SHEEHAN

v.

NEW HAMPSHIRE DEPARTMENT OF RESOURCES AND
ECONOMIC DEVELOPMENT

Argued: September 20, 2012
Opinion Issued: November 15, 2012

*Michael J. DiCola*, of Hudson, on the brief and orally, for the petitioner.

*Michael A. Delaney*, attorney general (*Lauren J. Noether*, senior assistant attorney general, and *Anne M. Edwards*, associate attorney general, on the memorandum of law, and *Ms. Noether* orally), for the respondent.

CONBOY, J. The petitioner, Kevin P. Sheehan, appeals an order of the Superior Court (*Lewis*, J.) entering judgment in favor of the respondent,

the New Hampshire Department of Resources and Economic Development (DRED), on his request for declaratory, injunctive, and other relief. We affirm.

The trial court found the following facts. On November 13, 2008, the petitioner purchased property in Derry (the Property). The Property abuts Jackman Road, which is a class VI town road and not in good condition. The Property is connected to Warner Hill Road by a .44 mile tract of land that is under DRED's control as part of its statewide trail system. *See* RSA ch. 216-F (2011).

In the 1930's, the Boston & Maine Railroad (B&M) owned this tract as part of a larger railroad corridor. In the mid-to-late 1930's, B&M sought to abandon the corridor to the State. After extended negotiations with B&M and adjacent abutters, the State acquired the corridor through a mechanism known as a Commissioners' Return of Highway Layout. The purpose expressed by the State in acquiring the corridor was to create a highway over its length. Thereafter, the New Hampshire Department of Public Works and Highways (DPWH) controlled the corridor. The DPWH removed the railroad ties from the corridor, but improved only certain portions; the portion of the corridor abutting the Property remains an unpaved dirt trail.

In 1975, the Governor and Executive Council transferred the unimproved portions of the corridor from DPWH to DRED for recreational trail use. *See* RSA 216-F:1, III. Before and after the 1975 transfer, the prior owners of the Property utilized the corridor to access the Property by non-recreational motor vehicles. In July 2008, however, before the petitioner purchased the Property, DRED moved a gate nearer to Warner Hill Road, effectively blocking all non-recreational motor vehicles from using the corridor to access the Property. Currently, the portion of the corridor abutting the Property is used only for recreational activities.

Before purchasing the Property, the petitioner understood that the State claimed ownership of the corridor and that a gate blocked non-recreational motor vehicle access. After purchasing the Property, the petitioner filed this equity action seeking to bar DRED from prohibiting or interfering with non-recreational motor vehicle access over the portion of the corridor separating the Property from Warner Hill Road. The petitioner alleges that DRED has violated RSA 216-F:2, II.

The superior court conducted a bench trial on this issue and heard from several expert witnesses. Ultimately, it determined that the State had acquired title in fee simple to the corridor through a highway layout and that the portion of the corridor abutting the Property is not a "public road" because the State has never "constructed" on it. Thus, the court ruled that DRED did not violate RSA 216-F:2, II. This appeal followed.

■ On appeal, the petitioner contends that the trial court erred when it determined that the State owns the corridor in fee simple and when it found that the corridor is not a public road. Because the petitioner failed to submit a transcript, we assume that the evidence was sufficient to support the trial court's conclusion and review for legal error only. *See Buatti v. Prentice*, 162 N.H. 228, 229 (2011).

■ We find consideration of whether the State acquired fee simple ownership and whether the corridor constitutes a public road unnecessary. Even if we assume, without deciding, that the trial court erred in both respects, we, nonetheless, affirm the trial court's decision because the State has statutory authority to limit the public's use of the corridor. *See* RSA ch. 216-F; *see also Catalano v. Town of Windham*, 133 N.H. 504, 508 (1990) ("[W]hen a trial court reaches the correct result, but on mistaken grounds, [we] will sustain the decision if there are valid alternative grounds to support it." (quotation omitted)).

We are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Estate of Gordon-Couture v. Brown*, 152 N.H. 265, 266 (2005). We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meaning to the words used. *Id.* Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. *Id.*

■ Furthermore, statutes in derogation of the common law are to be interpreted strictly. *Id.* While a statute may abolish a common law right, there is a presumption that the legislature has no such purpose. *Id.* If a common law right is to be taken away, it must be expressed clearly by the legislature. *Id.*

In relevant part, RSA 216-F:2 provides:

I. The trails within the system shall be held, developed and administered under this chapter primarily as recreational trails for hiking, nature walks, bird watching, horseback riding, bicycling, ski touring, snowshoeing, snowmobiling, mushing, and off highway recreational vehicles and the natural scenic beauty thereof shall be preserved insofar as is practical . . . .

II. Nothing in this section shall be construed to limit the right of the public to pass over existing public roads which may be or become part of the trail system . . . .

III. . . . A restriction on the use of any type of a mechanized means of transportation on portions of the trail shall be imposed

by the commissioner where, in his opinion, it would be most disruptive for the other stated principal purposes.

The petitioner argues that although RSA 216-F:2, I, provides that the trails within the statewide trail system shall be "held, developed and administered . . . as recreational trails," RSA 216-F:2, II provides that the section is not intended to "limit the right of the public to pass over existing public roads" that become part of the trail system. The petitioner asserts that, read together, these provisions preclude the State from restricting non-recreational motor vehicles over public roads that are part of the trail system. We disagree.

We cannot conclude that by enacting RSA 216-F:2, II, the legislature intended to prohibit DRED from excluding non-recreational motor vehicles from using public roads within its trail system that have not been developed for such use. Such an interpretation is contrary to the overall purpose of the statute. The legislature enacted RSA chapter 216-F to establish trails for recreational purposes such as hiking, nature walks, and bicycling. *See* RSA 216-F:2, I. Additionally, the legislature expressly allows DRED's commissioner to restrict the use of any type of a mechanized means of transportation "where, in his opinion, it would be most disruptive for the other stated principal trail uses." RSA 216-F:2, III.

Moreover, the petitioner's interpretation would abrogate common law principles when the legislature has not expressed a clear intention to do so. Under our common law, public highways are subject to State control. *State v. Cox*, 91 N.H. 137, 141 (1940), *aff'd*, 312 U.S. 569 (1941); *see also Opinion of the Justices*, 94 N.H. 501, 503 (1947). A highway's use is "such as the State permits, and . . . any conditions of permission are proper, provided they are not forbidden by the Constitution." *Cox*, 91 N.H. at 141. Furthermore, the State "may limit the travel uses to certain forms of use." *Id.* In other words, the State has the authority to regulate the "time, mode, and circumstances under which parties shall assert, enjoy, or exercise their rights of highway use." *Id.* (quotation and brackets omitted). Because the legislature has not clearly expressed an intention to abrogate these principles under RSA 216-F:2, II, we reject the petitioner's interpretation. *See Brown*, 152 N.H. at 266.

Here, DRED has not barred the petitioner's access over the corridor. Rather, DRED prohibits one form of access — non-recreational motor vehicle travel. Accordingly, we hold that the trial court did not err in concluding that DRED has not limited "the public's right to pass over existing public roads," pursuant to RSA 216-F:2, II.

As a final matter, any issue raised in the notice of appeal but not briefed is deemed waived. *See In re Estate of King*, 149 N.H. 226, 230 (2003).

*Affirmed.*

DALIANIS, C.J., and HICKS, LYNN and BASSETT, JJ., concurred.