MARY BREWER, By Her Next Friend, MRS. W. E. OLDHAM, v. DR. A. DeT. VALK, BOARD OF COUNTY COMMISSIONERS OF FORSYTH COUNTY, W. T. WILSON, Guardian of MARY BREWER.

(Filed 8 February, 1933.)

**Constitutional Law I c—Statute providing for sterilization of mental defectives is void, there being no provision for notice and hearing.**

A statute which makes it the duty of the board of county commissioners to have any mental defective sterilized by a qualified, registered surgeon upon a written order signed by the next of kin or legal guardian of such person or by the responsible executive of any State institution of which such person is an inmate, with the special provision that such order shall be approved by four reviewers specified, *i. e.* the Commissioner of Charities and Public Welfare, the Secretary of the Board of Health, and the chief officer of two institutions of the feeble-minded or insane, is unconstitutional, it being in violation of the provisions of the Fourteenth Amendment, sec. 1, of the Constitution of the United States declaring that

no State shall deprive any person of his life, liberty or property without due process of law or deny them the equal protection of the laws, and of the State Constitution, Art. I, sec. 17, providing that no person shall be deprived of life, liberty or property but by the law of the land, there being no provision in the statute giving a person ordered to be sterilized notice and a hearing or affording him the right to appeal to the courts.

APPEAL by defendants from *Stack, J.,* at October Term, 1932, of FORSYTH. Affirmed.

This is a civil action had before his Honor, A. M. Stack, judge presiding at the October Term, 1932, of the Superior Court of Forsyth County on complaint of the plaintiff for a permanent restraining order enjoining and restraining Dr. A. DeT. Valk from proceeding with an operation to asexualize or sterilize Mary Brewer under authority of chapter 43, section 6, entitled "Sterilization of Persons Mentally Defective." (See Michie's N. C. Code of 1931, section 2304h-1.)

The complaint is as follows: "The plaintiff, by her next friend, Mrs. W. E. Oldham, complaining of the defendants says: (1) That on 29 April, 1932, at a hearing before his Honor, W. E. Church, clerk of the Superior Court of Forsyth County, and a jury, the plaintiff was adjudged incompetent to manage her affairs and the defendant, W. T. Wilson was appointed as her legal guardian. (2) That on 29 April, 1932, the defendant, W. T. Wilson, requested the board of commissioners of Forsyth County to authorize and to have performed an operation upon the plaintiff for the purpose of rendering her sterile; that in compliance with this request, the board of commissioners of Forsyth County authorized and ordered the defendant, Dr. A. DeT. Valk, to perform an operation upon the plaintiff for the purpose of rendering her sterile. (3) That the defendant, Dr. A. DeT. Valk, is now preparing to so operate upon the plaintiff to her irreparable hurt and injury. (4) That the plaintiff does not consent to such operation and that if it is performed it will be without her consent and against her will. (5) That the proceedings mentioned above in paragraphs 2, 3 and 4 of this complaint were had under the authority of chapter 34 of the North Carolina Laws of 1929, which laws the plaintiff is informed and believes and, therefore, alleges, are unconstitutional as being in violation of the provisions of Article I, sections 17 and 35 of the Constitution of North Carolina, and section 1 of the Fourteenth Amendment to the Constitution of the United States. (6) That if the above mentioned operation is performed upon the plaintiff, she will suffer irreparable physical and mental hurt and loss for redress of which she neither has nor will have adequate remedy at law. Wherefore, the plaintiff prays: (1) That the defendants, their attorneys, agents or successors be enjoined and re-

strained from performing any operation upon the plaintiff for the purpose of rendering her sterile and that they be enjoined from proceeding in any manner to have such operation performed. (2) That notice issue to the defendants and each of them to appear before his Honor, the judge of the Superior Court of Forsyth County, at a time to be set to show cause, if any they have, why this injunction should not be made permanent."

The judgment of the court below is as follows: "This cause coming on to be heard and being heard before his Honor, A. M. Stack, judge presiding at the 3 October Term of the Superior Court of Forsyth County, and it appearing that a temporary injunction was signed on 6 October, 1932, upon a bill for injunction having been filed restraining the defendants from sterilizing the person of Mary Brewer, under authority of section 2304(i) of the Consolidated Statutes and of the sections following; and it appearing that ten days notice was given to the defendants in which to answer or show cause why this restraining order should not be made permanent; and it further appearing that defendants waived the ten days notice and voluntarily appeared in court on Saturday, 8 October, 1932, at 9:30 a.m., for the purpose of a hearing on the above restraining order; and it further appearing to the court that said statute is invalid and unconstitutional for that it fails to give plaintiff notice of the said operation, an opportunity to present witnesses and be heard, and it thereby violates the Fourteenth Amendment of the Constitution of the United States and section 1, Article XVII of the Constitution of North Carolina: It is, therefore, ordered, considered, adjudged and decreed, that the restraining order heretofore signed on 6 October, 1932, be, and the same is hereby continued and made permanent and the defendants are forever enjoined from sterilizing the said Mary Brewer, or perform upon her person any operation under the authority of section 2304(i) of the Consolidated Statutes and the sections following, which might impair her procreative organs."

To the signing of the foregoing judgment, the defendants excepted, assigned error and appealed to the Supreme Court.

*Hanselle L. Hester, Gordon E. Dean and William C. Lassiter for plaintiff.*

*Fred S. Hutchins, E. C. Bryson and T. Spruill Thornton for defendants.*

CLARKSON, J. The question involved: Is chapter 43, article 6, entitled "Sterilization of persons mentally defective" (Michie's N. C. Code of 1931, section 2304(i) and (j), Public Laws of 1929, chap. 34, secs. 2 and

3, unconstitutional, in that it failed to give this plaintiff notice and a hearing of the proposed operation, an opportunity to present witnesses and be heard, and thereby violates the Fourteenth Amendment, section one, of the Constitution of the United States and Article I, section 17, Constitution of North Carolina? We think so.

The sections are as follows: "(i) It shall be the duty of the board of commissioners of any county of North Carolina, at the public cost and expense, to have the operation performed upon any mentally defective or feeble-minded resident of the county, not an inmate of any public institution, upon the petition and request of the next of kin or legal guardian of such mentally defective person." "(j) No operation under this chapter shall be performed by other than a duly qualified and registered North Carolina surgeon, and by him, only upon a written order signed by the responsible executive head of the institution, or board, or next of kin, or legal guardian having custody or charge of the feeble-minded, or mentally defective inmate or patient, with the special provision that the order so issued shall in each specific case have the signed approval of four reviewers, which shall be (1) The Commissioner of Charities and Public Welfare of North Carolina; (2) the Secretary of the State Board of Health of North Carolina; (3 and 4) the chief medical officer of each of any two of the institutions for the feeble-minded or insane of the State of North Carolina."

The Constitution of the United States, Amendment 14, sec. 1, is as follows: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Constitution of North Carolina, Art. I, sec. 17, is as follows: "No person ought to be taken, imprisoned, or disseized of his freehold, liberties or privileges, or outlawed or exiled, or in any manner deprived of his life, liberty or property but by the law of the land." We shall also quote Article I, sec. 29: "A frequent recurrence to fundamental principles is absolutely necessary to preserve the blessings of liberty."

The defendants contend that the statute now under consideration comes within the police power of the State—promotion of general welfare and is constitutional, the courts have been unable or unwilling definitely to circumscribe police powers.

The principle is well stated in 6 R. C. L. (Police Power), sec. 182, pp. 183-4: "The police power is an attribute of sovereignty, possessed

by every sovereign state, and is a necessary attribute of every civilized government. It is inherent in the states of the American Union and is not a grant derived from or under any written constitution. It has been said that the very existence of government depends on it, as well as the security of social order, the life and health of the citizen, and the enjoyment of private and social life and the beneficial use of property. It has been described as the most essential, at times the most insistent, and always one of the least limitable of the powers of government." Part sec. 190, p. 191: "the police power under the American constitutional system has been left to the states. It has always belonged to them and was not surrendered by them to the general government, nor directly restrained by the Constitution of the United States. Each state has the power therefore to regulate the relative rights and duties of all persons, individuals and corporations, within its jurisdiction, for the public convenience and the public good. The only limit to its exercise in the enactment of law is that they shall not prove repugnant to the provisions of the state or national constitution," etc. *Reed v. Engineering Co.,* 188 N. C., at p. 42.

Mary Brewer is the mother of five children. It is the purpose under this act to sterilize her so she shall be incapable of further procreation. The record of her and her husband and children are heart-rending and we need not set them forth at length here. Those welfare organizations and humane officials who appear in the picture are to be commended for their care and interest in this mother and children. "For ye have the poor always with you." We always have had and always will have people of low mentality without normal intelligence. It has been since the beginning of time. The causes of this are often the sins of the fathers, heredity, disease, poverty and undernourishment—the struggle for daily bread, dissipation, and many other things, causing bodily and mental weakness. To the great credit of this commonwealth, under our Christian civilization, it has established institutions for the feeble-minded, cripple children, deaf, dumb and blind, and hospitals for those "whom the finger of God has touched," and other humane undertakings. We have many in the class like the present. The record discloses harrowing things in regard to this woman. "Mary Brewer was born in Greensboro, in 1905. She was the oldest of a family of 12 children, one of whom died of meningitis. She went to work at the age of ten years in a hosiery mill, from there to a cigarette factory and then to a knitting mill. . . . Mrs. Brewer states that before Margaret was born she went hungry often, and that the family are often hungry now." She married early in life. As to the husband and father: "We have tried to reinstate the family and tried to get Mr. Brewer to work. When

he worked he didn't put his money into the proper sources; he would drink and gamble."

There is nothing in the record reflecting on the virtue of Mary Brewer. It is the purpose under this statute to sterilize her so that she cannot give birth to children. As to the danger and seriousness of an operation of this kind, this is in the realm of the physician. The husband is left out of the picture, the lone woman is the burden-bearer. The sole question for us: Under the due process clause, can this sterilization be done *without notice or a hearing?* It has long been settled to the contrary in this jurisdiction—we have many cases affecting property rights.

In *Hart v. Commissioners,* 192 N. C., at p. 165, speaking to the subject, we find: "It is a sound and just principle of law and one worthy of acceptation that 'absence of notice or opportunity to be heard, violates the due process of law provision.' *Lumber Co. v. Smith,* 146 N. C., 199; *Markham v. Carver,* 188 N. C., 615." *Hamilton v. Adams,* 6 N. C., at p. 162; *Gamble v. McCrady,* 75 N. C., at p. 511; *Yarborough v. Park Commission,* 196 N. C., at p. 289.

In *Harden v. Raleigh,* 192 N. C., 395, the zoning ordinance was held constitutional, at p. 398, for the reason that "A tribunal was established and charged with duties, not ministerial but at least *quasi*-judicial and subject to review as the statute prescribed." *Little v. Raleigh,* 195 N. C., 793; *MacRae v. Fayetteville,* 198 N. C., at pp. 55-6; *S. v. Roberson,* 198 N. C., 72.

In property rights due process requires a forum with notice and a hearing. It goes without saying that the same must apply to human rights. If the Constitution and laws in relation to due process—notice and hearing which undoubtedly apply to a material thing, they should more so apply to the human element. "And he said unto them, What man shall there be among you, that shall have one sheep, and if it fall into a pit on the Sabbath day, will he not lay hold on it and lift it out? *How much* then is a man better than a sheep?" St. Matthew, 12:11, 12. *Miller v. Cornell,* 187 N. C., at p. 555.

The matter of sterilization and contraception is discussed in Herzog Medical Jurisprudence, chap. XLVII, at p. 713, where it is said: "The Virginia Statute (Laws of Virginia, 1924, chap. 394), provides that the superintendent of any state institution for incompetents may advise vasectomy or salpingectomy; that the operation should not be performed unless a board of experts prescribes the same, *at which time the patient may defend himself or herself and that appeal may be had from the decision of the board to the higher courts of the state.*" (Italics ours.)

In *Buck v. Bell,* 274 U. S., 200 (71 L. Ed., 1001), the Virginia Act was declared constitutional; at pp. 206, 207, the Court said: "On complying with the very careful provisions by which the act protects the patients from possible abuse. The superintendent first presents a petition to the special board of directors of his hospital or colony, stating the facts, and the grounds for his opinion, verified by affidavit. Notice of the petition and of the time and place of the hearing in the institution is to be served upon the inmate, and also upon his guardian, and if there is no guardian the superintendent is to apply to the circuit court of the county to appoint one. If the inmate is a minor notice also is to be given to his parents if any with a copy of the petition. The board is to see to it that the inmate may attend the hearings if desired by him or his guardian. The evidence is all to be reduced to writing, and after the board has made its order for or against the operation, the superintendent, or the inmate, or his guardian, may appeal to the circuit court of the county. The circuit court may consider the record of the board and the evidence before it and such other admissible evidence as may be offered, and may affirm, revise, or reverse the order of the board and enter such order as it deems just. Finally any party may apply to the Supreme Court of appeals, which, if it grants the appeal, is to hear the case upon the record of the trial in the circuit court and may enter such order as it thinks the circuit court should have entered. There can be no doubt that so far as procedure is concerned the rights of the patient are most carefully considered, and as every step in this case was taken in scrupulous compliance with the statute and after months of observation, there is no doubt that in that respect the plaintiff in error has had due process of law." 51 A. L. R., 855.

The present act makes no provision for notice and hearing, and therefore impinges the due process clause of the Constitution.

In *Sutton v. Phillips,* 116 N. C., at p. 504, as to the constitutionality of a statute, it is held: "While the courts have the power, and it is their duty, in proper cases to declare an act of the Legislature unconstitutional it is a well recognized principle that the courts will not declare that this coördinate branch of the government has exceeded the powers vested in it unless it is plainly and clearly the case. If there is any reasonable doubt it will be resolved in favor of the lawful exercise of their powers by the representatives of the people." *Long v. Rockingham,* 187 N. C., at p. 203; *Reed v. Engineering Co.,* 188 N. C., at p. 42; *Hinton v. State Treasurer,* 193 N. C., at p. 499.

We have read carefully the well prepared and able briefs of the parties to the controversy. We cannot do otherwise than declare the act unconstitutional for the reasons given. The judgment of the court below is

Affirmed.