THE BOARD OF COMMISSIONERS OF THE CITY OF NEWARK, PROSECUTOR, v. THE LOCAL GOVERNMENT BOARD OF THE STATE OF NEW JERSEY AND WALTER R. DARBY, DIRECTOR OF THE DIVISION OF LOCAL GOVERNMENT OF THE STATE OF NEW JERSEY, DEFENDANTS.

Argued October 3, 1945—Decided December 27, 1945.

For the prosecutor, *Thomas Parsonnet* (*George B. Astley*, of counsel).

For the defendants, *Walter D. Van Riper*, Attorney-General, and *John F. Bruther*, Deputy Attorney-General.

The opinion of the court was delivered by

HEHER, J.   The state's Director of the Division of Local Government ordered the elimination of two items from the "Appropriations for Dedicated Parking Meter Purposes" contained in the budget of the City of. Newark for the year 1945, *i. e.*, $7,000 for traffic signals and equipment, and $3,350 for motorcycles, as "not, under the provisions of *R. S.* 40:2–33, applicable to revenues dedicated to parking meter purposes;" and on appeal the Local Government Board affirmed that determination.   It directed that "all revenues and appropriations relating to parking meters be included in the general budget for 1945."   The grounds of the affirmance were that "parking meters" are not comprehended in the legislative category of "utilities or enterprises" as defined in *R. S.* 40:2–18, 40:2–24, 40:2–33, 40:62–2 and 40:63–30, and the moneys thus received are "general revenues of the municipality and all appropriations in connection therewith are general appropriations and should be set up in the general budget;" and that, since the appropriations for "general traffic regulation" in the municipality "far exceed the revenues from parking meters," and the city is disposed "to use some of the parking meter revenues for general traffic regulation, a dedicated budget strictly for parking meters would serve no useful purpose."   *Certiorari* was granted to review this action.

The argument advanced on behalf of the municipal governing body is that the use of parking meters is "incidental" to the exercise of the granted municipal power "to regulate and control traffic," and the moneys derived therefrom by their very nature constitute "a special fund dedicated" to the function of traffic regulation and therefore "can only be used and

budgeted as a dedicated revenue." *R. S.* 40:2–18 is cited as authority for this proposition. It is conceded that the operation of such meters is not fairly classable as a "publicly owned and operated utility or enterprise" within the intendment either of that provision or of *section* 40:2–33.

A summary of the pertinent local legislation follows: On September 24th, 1941, the governing body enacted an ordinance regulating traffic and the use of the city's streets, and providing for the installation and management of parking meters; and the moneys to be derived from the meters were thereby "levied and assessed as fees to provide for the proper regulation and control of traffic upon the public streets, and also the cost of supervising and regulating the parking of vehicles in the parking meter zones" therein created, and the cost of installation, maintenance and operation of the meters. The deposit of a five-cent coin permits parking within the established zones for a fixed time, without the right of renewal. And on August 11th, 1943, an ordinance was adopted creating the "Division of Parking Meters" in the Department of Public Safety to enforce the provisions of the first-cited ordinance, and providing for the payment of the salaries of the personnel from a "fund to be set up" by the city from the moneys "received for use of parking meters."

Thus, the parking meters were designed to aid in controlling the use of the public streets in the exercise of the police power; and it is fundamental that, while the meters may be employed to defray the expense of the general regulatory service, a municipality may not, under the guise of regulation, lay a license or privilege tax upon the use of the streets. The devotion of the meters to the raising of revenue is not a proper exercise of the police power. *State, Benson, Pros.,* v. *Mayor and Council of Hoboken,* 33 *N. J. L.* 280; *North Hudson Co. Railway* v. *Hoboken,* 41 *Id.* 71; *Muhlenbrinck* v. *Commissioners,* 42 *Id.* 364; *Clark* v. *New Brunswick,* 43 *Id.* 175; *Cape May* v. *Cape May Transportation Co.,* 64 *Id.* 80; *Gaynor* v. *Roll,* 79 *Id.* 402; *Dunn* v. *City of Hoboken,* 85 *Id.* 79. The municipality is not invested with authority to levy a road tax of this class. It is empowered to enact ordinances "regulating special conditions existent"

within its confines "on the subjects and within the limitations" therein specified—among others, "Regulations governing the parking of vehicles on streets and portions thereof." *R. S.* 39:4–197.

But it does not follow from the foregoing that the income from parking meters is a "dedicated revenue" within the concept of section 40:2–18. While the quantum of the parking charge and the consequent return may measure the validity of the enactment, it is not a corollary that the income thus had is "dedicated" in legislative intendment, either to the expense of traffic regulation in general or to the cost of installing and operating the meters in particular. The bare circumstance that the exactions under a police regulation are confined to the cost of the service does not impart the quality of "dedication" in the statutory sense. Under section 40:2–18, it is requisite that the "revenue" (note the term!) be "required by law to be applied to a specific purpose;" and this is not the case here, although the ordinance provides that the cost of installing and maintaining the meters shall be chargeable to the "fees" thereby received. There is no such requirement laid down by statute; there is no suggestion of a legislative design to "dedicate" these moneys to a particular purpose. It is noteworthy that there is a specific dedication of the income of municipally owned utility services and special assessments levied on property benefited by local improvements. *R. S.* 40:2–24, 40:2–33, 40:2–34. But the operation of parking meters is not within the category of municipally owned utilities regulated by *section* 40:62–1, *et seq.;* nor is it given that status by any other statute. The legislature has not deemed it a revenue-producing enterprise calling for special classification and a particular application of the income. Dedication is an affirmative legislative act; and it requires something more than the mere receipt of moneys under a police regulation which in *quantum* are limited to the cost of supervision and enforcement. The earmarking of municipal income for a special use is a deviation from the normal policy of making appropriations for public purposes in keeping with income and the exigencies of the local economy; and the dedicatory intention is not to be presumed but plainly indicated in the legislative expression.

The meter provision is an integral part of the local traffic code, designed to aid in the attainment of the general objectives of that enactment; and it would seem that the money-yield is applicable to the defrayment of the cost of performing the general function of regulating and controlling traffic without rendering the measure one for revenue in the purported exercise of the police power. The meter rates are such as are in all seeming necessary for the attainment of ,the primary purpose of such devices, *i. e.*, the free movement of traffic, the avoidance of the evils of congestion on the highways, and the abuse of the parking privilege. These impositions bear a reasonable relation to that end. Parking in the public streets in its broader connotation is a privilege in derogation of the common easement of travel and transport, and the uses incident thereto not inconsistent with the correlative rights of other travelers, and the abutting owner's qualified additional right of ingress and egress; and its control is therefore intimately identified with traffic regulation in its larger aspect and thus related to the essential public welfare. *Vide Barnes* v. *Essex County Park Commission,* 85 *Id.* 70; *affirmed,* 86 *Id.* 141. In *Rex* v. *Cross, 3 Campbell* 224, there was an indictment for a common nuisance in parking stage-coaches for an unreasonable period on a highway near Charing Cross; and, in holding the evidence established guilt, Lord Ellenborough said: "The King's highway is not to be used as a stable-yard." Here, the parking rates do not reveal an intention to levy a tax in the guise of a police regulation; and this is generally the criterion of validity, even though the income may exceed the expense incident to supervision and enforcement. The provision in question purports to be a police regulation, and we find no basis for a finding *contra* as a matter of law. But, in the ultimate analysis, the issue is not the validity of the regulation, but whether the meter receipts take the category of dedicated revenue within the meaning of the Budget Act. For the reasons stated, we resolve the inquiry in the negative.

Let the judgment of the Local Government Board be affirmed, but without costs.