STATE v. WILLIAM G. SCOGGIN, JR.

(Filed 22 August, 1952.)

**1. Appeal and Error § 40l—**

The rule that the Supreme Court will not decide a constitutional question when the appeal may be decided upon a question of lesser moment applies only to acts of the General Assembly and not to the validity of a municipal ordinance.

**2. Appeal and Error § 1—**

The Supreme Court will overlook nonfatal deficiencies in the record in order to exercise its existing jurisdiction at the first opportunity when the appeal presents a grave problem of general public concern.

**3. Constitutional Law § 14½—**

The General Assembly has the power to regulate parking of automobiles in congested areas in the exercise of the State's police power to promote peace, comfort, convenience, and prosperity of its people.

**4. Municipal Corporations § 36—**

The General Assembly may delegate to a municipality, as a governmental agency or arm of the State, authority to enact ordinances in the exercise of the police power for the government of those within its limits, including the right to prescribe rules or standards of conduct, the violation of which shall constitute a criminal offense.

**5. Constitutional Law § 11: Municipal Corporations § 36—**

The police power is subordinate to the constitutional guarantee of equality of privilege and of burden, and any attempted exercise thereof which results in the denial of equal protection or application of the law is invalid. Fourteenth Amendment to the Federal Constitution.

**6. Municipal Corporations § 36—**

An ordinance adopted by a municipality in the exercise of delegated police power must be uniform and apply alike to all within a designated class and must have a reasonable relation to the evils sought to be remedied.

**7. Municipal Corporations § 5—**

A municipality is a mere creature of the Legislature with only such powers as are delegated to it, which delegated powers must be exercised strictly within the limitations prescribed by the General Assembly.

**8. Municipal Corporations § 38½—**

A municipality in the exercise of the police power delegated to it by G.S. 160-200 (31) may require a motorist who parks his vehicle in a parking meter zone to set the meter in operation by depositing a coin, provided that the deposit of the coin is the method selected by its governing body in the exercise of its discretion for the purpose of regulating parking in the interest of the public convenience and not as a revenue raising measure.

**9. Statutes § 11—**

Penal statutes are construed strictly against the State and liberally in favor of the private citizen with all conflicts and inconsistencies resolved in his favor.

**10. Municipal Corporations § 38½—**

Where a municipal ordinance prescribes that parking in a designated zone should be limited to one hour, a motorist cannot be convicted of over-time parking when he parks in such zone for less than the prescribed one hour period, and a provision of the ordinance that a motorist should be subject to criminal prosecution if he parks in the one hour zone for longer than twelve minutes upon the deposit of a one-cent coin, or twenty-four minutes upon the deposit of two one-cent coins for successive periods, *is held* unconstitutional as being discriminatory and as making the period of time dependent not upon public convenience but upon the amount of money deposited.

**11. Same—**

Where a municipal ordinance prescribes one-hour and two-hour parking meter zones upon the deposit of a five-cent coin, the ordinance may permit by nonpenal provisions that a motorist may deposit a one-cent coin for a shorter length of time, provided the motorist may, by depositing additional pennies, not to exceed a total of five, remain in the parking space for the total length of time prescribed by the ordinance for such zone.

**12. Criminal Law § 81c (4)—**

Where a general verdict of guilty is returned upon a warrant charging two counts and there is no error in the trial in respect to one of the counts, defendant is not entitled to a new trial.

ERVIN, J., concurring in result.

APPEAL by defendant from *Carr, J.,* March Term, 1952, WAKE.

Criminal prosecution under warrant issued out of the City Court of the City of Raleigh in which it is charged that defendant violated a city parking ordinance by (1) leaving his automobile standing in a meter-controlled parking space without setting said meter in operation by depositing "a coin of any sort" therein, and (2) parking overtime.

The City of Raleigh has adopted and there is now in force in said city an ordinance declaring that certain areas of the city, mainly in the business section, are so congested by vehicular traffic that "public convenience and safety demand" regulation, and dividing said congested areas into twelve-minute, one-hour, and two-hour limited parking zones between 8:00 a.m. and 6:00 p.m. during weekdays with certain exceptions not material here.

Some of the zones are meter controlled. Others are not. It is necessary for us to summarize the sections of the ordinance, the provisions of which are essential to an understanding of the questions involved on this appeal.

Section 19 provides that "when signs are erected in each block giving notice thereof," no person shall park a vehicle for a longer period than the time specified for the respective areas thereinafter designated and defined on any day between 8:00 a.m. and 6:00 p.m. except on Sundays and certain holidays. It then zones the congested areas in part as follows:

"*One Hour Parking.* No person shall park any vehicle for longer than ONE HOUR at any one time along the following streets . . .

"(a) . . .

"(b) Along Fayetteville Street between Morgan Street and Cabarrus Street."

The necessary finding as to the demands of public convenience and safety and the declared policy of the city in respect to areas congested by vehicular traffic required by G.S. 160-200 (31) are contained in Section 66. This section likewise establishes meter parking zones. Fayetteville Street from Morgan to Cabarrus is included, and parking thereon is limited to one hour between 8:00 a.m. and 6:00 p.m. except on Sundays and certain holidays and except at the Post Office and three spaces on the east side just south of Martin where parking is limited to twelve minutes both day and night.

Signs have been erected in each block of this area as required by Section 19. These signs are printed on metal in green letters on a white background and read as follows:

"One Hour Parking from 8 A.M. to 6 P.M."

Defendant's automobile was parked in a one-hour parking space within this zone.

Section 67 makes provision for the installation of parking meters for the purpose of regulating parking within the zones established by Section 66. It requires individual parking spaces to be marked off and desig-

nated and that a parking meter be installed "upon the curb alongside of or next to, individual parking places . . ." It further provides that "Each parking meter shall be so set as to display a signal showing legal parking upon the deposit of a five-cent coin . . . therein for a period of one hour, or a one-cent coin therein for a period of twelve minutes . . . for parking within a one-hour parking meter zone . . ." "Each parking meter shall also be so arranged that upon the expiration of said parking limits it will indicate by mechanical operation and proper signal that the lawful parking periods as fixed by this section have expired." It also makes similar provisions for the twelve-minute and the two-hour parking zones.

Section 68 provides that "when any vehicle is parked in any space alongside of . . . a parking meter, the owner . . . or driver of said vehicle shall . . . deposit a five-cent coin, or a one-cent coin, depending upon the length of time said owner . . . or driver shall require, in the parking meter alongside of . . . said parking space, and shall set said meter in accordance with the instructions contained thereon; and the said parking space may then be used by such vehicle during the parking limits provided in section 67 of this chapter. If said vehicle shall remain parked in such parking space beyond the period of one hour upon the deposit of (a) five-cent coin or the period of twelve minutes upon the deposit of a one-cent coin within a one-hour parking meter zone . . . the parking meter shall display a sign indicating illegal parking, and in that event such vehicle shall be considered parked overtime, and the parking of a vehicle overtime . . . where any such meter is located shall be a violation of article one of this chapter and punished as therein provided; provided, that any owner . . . or driver of any vehicle shall be allowed to deposit, at separate intervals, one-cent coins for a parking period of twelve minutes within a one-hour zone . . . the aggregate deposit not to exceed two one-cent coins for two such parking periods."

Section 69. "No person shall be allowed to deposit . . . more than two one-cent coins for the purpose of extending his parking period . . ."

Section 78 makes the violation of any of the provisions of Sections 66-78 subject to the penalties provided in Chapter 5 of the City Code.

There are attached to each meter "plainly visible" instructions as follows:

"ONE HOUR PARKING

12 minutes 1c
24 minutes 2c
36 minutes 3c
48 minutes 4c
60 minutes 5c

OR ONE NICKEL
8 A.M. to 6 P.M. Daily
Sundays Excepted"

The jury found all the facts pertaining to the parking ordinances and the installation of meters as here summarized and further found that "On February 25, 1952, not being a Sunday or other holiday as set out in said ordinances, and between the hours of 8 A.M. and 6 P.M., defendant willfully drove his Buick automobile into the parking meter space on the east side of Fayetteville Street, between Morgan Street and Cabarrus Street . . . and there parked said automobile for a period of 15 minutes . . . Defendant willfully failed and refused to deposit any coin of any sort in the said parking meter upon the curb alongside . . . said space, either at the time he entered said parking space with his automobile or at any time during the period that said automobile remained in said parking space, and said parking meter during said entire period displayed a sign plainly indicating illegal parking."

It returned its findings of fact as a special verdict. The presiding judge being of the opinion that, on the facts found, defendant is guilty as charged, so instructed the jury. The jury thereupon returned a verdict of guilty. The judge pronounced judgment on the verdict and defendant appealed.

*Attorney-General McMullan and Robert B. Broughton, Member of Staff, for the State.*

*Joseph B. Cheshire, Jr., for defendant appellant.*

BARNHILL, J. Following our decision in *Rhodes, Inc., v. Raleigh,* 217 N.C. 627, 9 S.E. 2d 389, the General Assembly adopted Ch. 153, Session Laws of 1941, now G.S. 160-200 (31), vesting in the municipalities of the State authority "to regulate and limit vehicular parking on streets and highways in congested areas." The Act further provides in part that "in the regulation and limitation of vehicular traffic and parking in cities and towns the governing bodies may, in their discretion, enact ordinances providing for a system of parking meters designed to promote traffic regulation and requiring a reasonable deposit (not in excess of five cents per hour) from those who park vehicles for stipulated periods of time in certain areas in which the congestion of vehicular traffic is such that public convenience and safety demand such regulation." See also G.S. 160-501 and sec. 22 (36), Ch. 1184, S.L. 1949 (Charter of City of Raleigh).

G.S. 160-200 (31) vests the City of Raleigh with authority to divide the areas of the city congested by vehicular traffic into zones or districts,

limit the parking of automobiles in such zones as public convenience and safety may demand, install meters in furtherance of the enforcement of such regulations, and require a motorist who leaves his automobile standing in a meter-controlled parking space to put the meter alongside said parking space in operation by depositing the designated coin in the meter at the time he enters the space for the purpose of parking to the end his parking may be timed or measured by the meter for the information of the law enforcement officers of the city.

Pursuant to this authority thus vested in it, the governing body of the City of Raleigh enacted the ordinance which is summarized in the statement of facts, zoning areas congested by automobile traffic and providing for the regulation of parking within said zones by the use of parking meters.

The ordinance adopted creates two criminal offenses material here: (1) parking in a meter-controlled parking space without first setting the meter in operation by depositing in it one of the designated coins; (2) leaving an automobile standing in said space for a period longer than that specified by the ordinance and signs erected for that particular zone.

The defendant is charged with the violation of each of these penal provisions of the ordinance. He was convicted on both counts. He rests his appeal to this Court primarily upon the contentions that (1) the ordinance is invalid as a police regulation, and (2) the City of Raleigh, in adopting the ordinance it now seeks to enforce, exceeded the authority delegated to it by the General Assembly. He states the question presented in this manner: "Does the requirement, on pain of criminal liability, for the deposit of money in a parking meter in order to park an automobile on the public streets for a period of time which varies in accordance with the amount of money deposited have a reasonable relation to the legitimate exercise of police power in the regulation and limitation of vehicular traffic and parking?"

It is suggested, however, that this raises a constitutional question, and courts do not let a case turn on a constitutional question when it may be decided on any other grounds. This is a sound rule when rightly applied. It is bottomed on the philosophy of equality between the legislative, executive, and judicial branches of our government and the system of checks and balances provided by our fundamental law. While we have cited the rule in cases involving municipal ordinances, strictly speaking, it applies only to Acts of the General Assembly—a co-ordinate branch of the government. *S. v. Lueders,* 214 N.C. 558, 200 S.E. 22; *S. v. High,* 222 N.C. 434, 23 S.E. 2d 343.

The constitutionality of the enabling statute is not at issue, and there is no sound reason why we should hesitate to determine whether a municipal corporation, a subordinate branch of the government, a creature of

the Legislature which can exercise only those powers which have been expressly or by necessary implication delegated to it, has exceeded its authority. *Madry v. Scotland Neck,* 214 N.C. 461, 199 S.E. 618.

It would seem to be clear that this and the companion case against this same defendant, this day decided, are test cases to ascertain to what extent and in what manner the meter method of controlling parking of vehicles in congested areas of municipalities may be accomplished. It is apparent the defendant agreed to become the guinea pig in the test and is co-operating, for he has made material admissions of fact which the State, no doubt, would have found it most difficult to establish if it had been put to proof.

Moreover, the questions here presented are of vital public interest, affecting many of the municipalities of the State. It is a matter of common knowledge that the criminal dockets in the Superior Courts of those counties in which parking meters are used are becoming congested with appeals from city courts in overtime parking cases. Solicitors and judges alike doubt the constitutionality of some of the provisions of the ordinances and the sufficiency of available proof in many cases. At least one judge of the Superior Court has held a similar ordinance unconstitutional *in toto* and even members of this Court are not in complete accord.

None of the parties are entitled to an advisory opinion from this Court. They have adopted the only method available to them to ascertain the validity of the ordinance. In turn we, in the public interest, must do our part by overlooking nonfatal deficiencies in the record and deciding the essential questions presented to the end any necessary revisions of the ordinance may be made and the officers of the law and the trial courts may proceed to enforce parking regulations with assurance as to their duties and the rights of individual motorists.

While necessity does not create power, it sometimes demands the prompt and effective exercise of power. We must not assume authority we do not possess, but we must at times exercise existing jurisdiction at the first opportunity to the end the executive and legislative branches of the government may know what they may and should do to meet a grave problem of general public concern. This is one of those occasions.

As we said in *Insurance Asso. v. Parker,* 234 N.C. 20, "The complexity of today's commercial relations and the constantly increasing number of automobiles render the question of parking a matter of public concern which is taxing the ingenuity of our municipal officials." Unquestionably, the power to enact laws designed and intended to meet this problem comes within the general authority of the Legislature to enact laws to promote the peace, comfort, convenience, and prosperity of its people. *Escanaba, etc., Trans. v. Chicago,* 107 U.S. 678, 27 L. Ed. 442; *S. v. Ballance,* 229 N.C. 764, 51 S.E. 2d 731. The evils to be remedied are

proper objectives of legislation enacted under the police power of the State.

A municipality is a governmental agency or arm of the State, and so the General Assembly may delegate to a city or town the authority to enact ordinances in the exercise of the police power for the government of those within its limits. *Bohn v. Salt Lake City,* 8 P. 2d 591, 81 A.L.R. 215. This includes the power to prescribe rules or standards of conduct the violation of which shall constitute a criminal offense. *Suddreth v. Charlotte,* 223 N.C. 630, 27 S.E. 2d 650.

But this power is subordinate to the constitutional guarantee of equality of privilege and of burden contained in the Fourteenth Amendment to the Federal Constitution. *Republic Iron & Steel Co. v. State,* 66 N.E. 1005, 62 L.R.A. 136; *Smith v. Cahoon,* 283 U.S. 553, 75 L. Ed. 1264. Any attempted exercise of the police power which results in the denial of equal protection of the law is invalid. *Smith v. Cahoon, supra.*

Therefore, an ordinance must be uniform and must have a reasonable relation to the evil sought to be remedied. Its objective must be the elimination of the known evil and must be so designed that it applies alike to all within a designated class. *In re Appeal of Parker,* 214 N.C. 51, 197 S.E. 706; *S. v. Danenberg,* 151 N.C. 718, 66 S.E. 301; *Shelby v. Power Co.,* 155 N.C. 196, 71 S.E. 218; *Clinton v. Oil Co.,* 193 N.C. 432, 137 S.E. 183; *McRae v. Fayetteville,* 198 N.C. 51, 150 S.E. 810; *Shuford v. Waynesville,* 214 N.C. 135, 198 S.E. 585; *Rhodes, Inc., v. Raleigh, supra.*

Furthermore, a municipality is a mere creature of the Legislature. It has no inherent power and must exercise delegated power strictly within the limitations prescribed by the Legislature. *Kass v. Hedgpeth,* 226 N.C. 405.

So much for the principles of law which must control decision here. In considering the ordinance under which defendant stands indicted, it must be noted in the beginning that its validity depends, in the first instance, upon whether it meets the condition or limitation contained in the enabling statute, and its enforceability is restricted by the condition imposed by the ordinance itself.

The city may enact a meter control parking ordinance only for those "areas in which the congestion of vehicular traffic is such that public convenience and safety demand such regulation," G.S. 160-200 (31), and the ordinance is effective "when signs are erected in each block giving notice thereof." Section 19, Code of Raleigh.

On this record it is apparent that defendant is guilty on the first count and his conviction must be sustained if the provisions of the ordinance under which the charge is laid is valid and enforceable as a penal police regulation. We are of the opinion that it must be so considered.

A meter is a mechanical watchman set to time the period of parking in the parking space it is set to watch. It has come into widespread use and is accepted by public officials and motorists alike as a practical solution of the traffic problems involved in areas of cities which are congested by vehicular traffic, and it is now an established part of the traffic control system of many municipalities.

But it is a useless device constituting an unnecessary obstacle to free passage on the sidewalk unless it is set in operation at the time a motorist parks his vehicle. The requirement that the motorist set the meter in operation is a necessary part of the regulation intended and designed to control parking in congested areas and must be upheld as such. We do not deem it unreasonable to require a motorist to perform this service as a condition precedent to his right to park. That this is to be accomplished by the deposit of a coin is immaterial so long as it is a means to that end and not a disguised method of raising revenue.

It is quite true that in all probability some feasible method of setting the meter in operation without requiring the motorist to deposit a coin and thus, in a sense, "pay" for his right to park upon a public street may be devised. But the existence of some other method does not render the action of the board in selecting the coin method void. It had the right, in its discretion, to select the plan which it deemed best under the circumstances.

Of course, the difficulty has been and will continue to be the limitation of the requirement that the meter be set in operation by the deposit of a coin in such manner as to retain the regulation as one designed to promote the public convenience and safety and not to raise revenue. It is valid only so long as its prime purpose is to regulate parking in congested areas, and the maintenance fund derived from the deposit of coins is purely incidental. Here it is not found as a fact, and we find in the record no substantial indication, that the ordinance is a revenue-producing measure rather than a police regulation.

This brings us to the second count in the warrant in which it is charged that defendant parked overtime. He parked only fifteen minutes in a one-hour parking space on a street where the signs give notice that one-hour parking is permitted. Yet he stands convicted on this charge.

Section 19 of the ordinance declares that "when signs are erected . . . giving notice thereof . . . no person shall park any vehicle" on Fayetteville Street "longer than one hour at any one time . . ." Signs have been erected in the block where defendant's automobile was parked, giving notice that one-hour parking is permitted in that block. The city board has formally declared in the ordinance that public convenience and safety demand that parking on Fayetteville Street between Morgan and Cabarrus shall be limited to one hour. In view of these positive provisions of

the ordinance, is a motorist guilty of overtime parking when he leaves his vehicle standing in a parking space in that zone for only 15 minutes? The answer to this question necessitates a consideration of the provisions of Sections 68 and 69 of the ordinance which declare, in effect, that upon the deposit of only one penny in any meter at a one-hour parking space, lawful parking shall be limited to twelve minutes, and that upon the deposit of a second penny at a later interval the lawful parking time shall be extended to a total of twenty-four minutes. Are these provisions, creating limits within a limit, valid police regulations or do they offend the rule of uniformity as contended by defendant?

The ordinance contains no declaration that public convenience and safety demand that a motorist shall not park his vehicle in the area which includes the parking space in question for more than twelve minutes or twenty-four minutes. Instead, it declares in positive terms, that cannot be misunderstood, that parking for not more than one hour therein is lawful; that parking for more than that period at any one time is the act that is inconsistent with the demands of public convenience and safety. Likewise, the signs erected and the instructions attached to the meters in that block give notice to the public that one-hour parking in a space set apart therein for that purpose is lawful. We cannot say that the ordinance declares that public convenience and safety require that either twelve minutes or twenty-four minutes shall constitute the period of lawful parking in that block without holding that the provision is written into the ordinance by necessary implication in direct conflict with the positive terms of the law and the signs erected pursuant thereto. And it is axiomatic that penal statutes are construed strictly against the State and liberally in favor of the private citizen. All conflicts and inconsistencies are resolved in favor of the defendant.

Furthermore, to say that public convenience and safety demand that one motorist may not lawfully park his vehicle for more than twelve minutes or twenty-four minutes while another may park an hour in the same space would destroy uniformity, eliminate equality of privilege, and create a serious conflict in the terms of the ordinance itself. The conclusion that parking for one hour in a space set apart for one-hour parking is consistent with the demands of public convenience and yet public convenience requires a motorist to remove his vehicle from the identical space at the end of twelve minutes or twenty-four minutes is so conflicting in content as to be utterly irreconcilable. If public convenience and safety will permit one motorist to park in a given space for the period of one hour, then that privilege must be accorded to all, without additional limitation or restriction, in accord with the requirements of uniformity of right and equality of privilege guaranteed by the Fourteenth Amendment of the Federal Constitution.

In providing for the lesser parking limitations, the ordinance itself recognizes and classifies the space as a one-hour parking space and un-equivocally bases the lesser periods upon the amount of money deposited in the meter. There is no attempt to evade or camouflage this fact. "Each parking meter shall be so set as to display a signal showing legal parking upon the deposit of a . . . one-cent coin therein for a period of twelve minutes, for that part of the street upon which the meter is placed, *for parking within a one-hour parking meter zone . . ."* Section 67. "If said vehicle shall remain parked in such parking space beyond the period of . . . twelve minutes upon the deposit of a one-cent coin *within a one-hour parking zone . . .* such vehicle shall be considered parked over-time . . ." Section 68. "Provided that any owner . . . or driver of any vehicle shall be allowed to deposit, at separate intervals, one-cent coin for a period of twelve minutes *within a one-hour zone . . .* the aggregate deposit not to exceed two one-cent coins for two such parking periods." Section 69. (Italics supplied.)

Other language used in the ordinance likewise refutes any suggestion that the two lesser parking periods provided for in a one-hour parking space are bottomed on the demands of public convenience and safety. A motorist, upon entering a one-hour parking space for the purpose of park-ing, "shall, upon entering said parking space immediately deposit a five-cent coin or a one-cent coin, depending upon the length of time said owner . . . driver shall require . . ." Thus the right to select the lesser period is made to rest in the individual motorist and not upon the demands created by congested traffic. While the individual motorist is entitled to every consideration conditions will permit, his requirements or desires cannot be made the basis of penal police regulations. Though he first selects a twelve-minute period when he enters the parking space, his right to remain for the full period of one hour in accord with the ordinance still exists.

Therefore, the conclusion is inescapable that the lawfulness of the parking for the lesser periods of twelve minutes or twenty-four minutes in a one-hour parking space prescribed by the ordinance rests not on the demands of public convenience and necessity required by the enabling statute and the fundamental law but upon the amount of money deposited in the meter. This will not suffice for the lawfulness of parking cannot be made to depend upon the amount of money deposited in the meter. The maximum length of time the motorist may leave his vehicle standing in a parking space on a public street must be fixed by law.

It follows that since the defendant parked for only fifteen minutes in a one-hour parking space he is not guilty of parking overtime as charged in the second count of the warrant.

STATE *v.* SCOGGIN.

The vice in the ordinance does not lie in the fact a motorist who intends to park only temporarily is permitted to select a period of parking less than one hour and thereby decrease the amount he is required to deposit in the meter to set it in operation. It lies in the fact that when he once selects a twelve or twenty-four minute period, he is thereafter prohibited, on pain of criminal prosecution, from extending that time by depositing additional pennies, not to exceed a total of five, so as to exercise the privilege granted by the ordinance, the signs erected thereunder, and the instructions attached to the meter. Therefore, it must not be understood that we mean to say that it is improper or unlawful for the city to establish shorter parking periods for one-hour and two-hour parking spaces by nonpenal provisions such as those now contained in its ordinance for the convenience of the motorist, to minimize his contribution to the maintenance fund, and to expedite traffic.

If the motorist permits the meter to register overtime parking, he is subject to citation to court to answer the charge of parking overtime. No doubt the coercive influence of this fact, with its attendant expense and loss of time, will induce most, if not all, motorists to comply strictly with such secondary or incidental provisions. In any event, it is for the city board to balance the advantages and disadvantages which may arise therefrom and decide which is the better course to pursue.

The jury returned a general verdict of guilty. There was no error in the trial with respect to the first count and only a minimum fine was imposed. Under these circumstances no cause for a new trial is made to appear. *S. v. Foy,* 233 N.C. 228, 63 S.E. 2d 170; *S. v. Cobb,* 233 N.C. 647, 65 S.E. 2d 131; *S. v. Best,* 232 N.C. 575, 61 S.E. 2d 612; *S. v. Merritt,* 231 N.C. 59, 55 S.E. 2d 804; *In re McKnight,* 229 N.C. 303, 49 S.E. 2d 753; *S. v. Smith,* 226 N.C. 738, 40 S.E. 2d 363.

The court below will enter a verdict of not guilty on the second count in accord with this opinion. In the trial on the first count we find

No error.

ERVIN, J., concurring in the result reached by the majority, but dissenting from certain legal views expressed by them.

I accept without reservation the decision that no error was committed on the trial in the court below. But I find myself in disagreement with the majority in two respects.

The first point of disagreement concerns the interpretation of the record and is inconsequential in nature. As I see it, the accused has been adjudged guilty of this single offense: parking a motor vehicle in a parking space in the City of Raleigh without depositing a coin in the nearest parking meter as required by the city parking meter ordinance.

The second point of disagreement involves a question of constitutional law and is fundamental in character. For this reason, I deem it permissible for me to set forth in detail the reasons which leave me with the abiding conviction that there is no conflict between any of the provisions of the parking meter ordinance under review and the organic law.

It seems advisable to advert at the outset to the decision in *Rhodes v. Raleigh,* 217 N.C. 627, 9 S.E. 2d 389, 130 A.L.R. 311, which has been rather generally misinterpreted by legal text writers. This case turned on the fundamental proposition that a municipality is a creature of the State and has no powers save those conferred upon it by the laws of the State. *Green v. Kitchin,* 229 N.C. 450, 50 S.E. 2d 545; *S. v. Gulledge,* 208 N.C. 204, 179 S.E. 883; *S. v. Thomas,* 118 N.C. 1221, 24 S.E. 535. When it was argued and decided, the statute then codified as C.S. 2787 (31) gave municipalities power merely "to provide for the regulation . . . and limitation of . . . vehicular traffic" upon their public streets. The only question directly and properly before the court in the *Rhodes case* was whether or not C.S. 2787 (31) or any other then existing legislative enactment conferred upon the City of Raleigh power to enact an ordinance regulating parking on its streets by the use of coin-operated parking meters. The majority of the court answered that question in the negative. The various statements in the Court's opinion which were not necessary to the decision of that precise question constitute *obiter dicta,* and have no effect as declaring the law.

At its first session after the decision in the *Rhodes case,* the Legislature adopted Chapter 153 of the Public Laws of 1941 for the avowed purpose of amending C.S. 2787 (31). The amendatory act, which is now embodied in G.S. 160-200 (31), gives to municipalities in express terms the power "to regulate and limit vehicular parking on streets in congested areas." Moreover, it specifies that "in the regulation and limitation of vehicular traffic and parking in cities and towns the governing bodies may, in their discretion, enact ordinances providing for a system of parking meters designed to promote traffic regulation and requiring a reasonable deposit (not in excess of five cents per hour) from those who park vehicles for stipulated periods of time in certain areas in which the congestion of vehicular traffic is such that public convenience and safety demand such regulation." It further provides that "the proceeds derived from the use of such parking meters shall be used exclusively for the purpose of making such regulation effective and for the expenses incurred by the city or town in the regulation and limitation of vehicular parking, and traffic relating to such parking, on the streets and highways of said cities and towns."

It thus appears that the Legislature has explicitly delegated to municipalities the power to enact ordinances regulating vehicular parking on

public streets in congested areas by the use of parking meters, and providing for the collection of a meter fee sufficient to cover the expenses of maintaining the parking meters and enforcing parking regulations.

Subsequent to the adoption by the General Assembly of 1941 of the statute now codified as subsection 31 of G.S. 160-200, the City of Raleigh enacted a parking meter ordinance "to regulate and limit vehicular traffic and parking . . . during the hours of 8:00 o'clock A.M. to 6:00 o'clock P.M. each day, except Sundays, Independance Day, Labor Day, Thanksgiving Day, and Christmas Day . . . in certain areas of the city . . . in which the congestion of vehicular traffic is such that public convenience and safety demand such regulation."

The ordinance divides the specified areas of the city into three classes of districts designated as twelve minute parking meter zones, one hour parking meter zones, and two hour parking meter zones. Under its provisions, parking spaces are marked off on the streets of the various zones in which motor vehicles may be parked, and parking meters, which are clocks set on posts to measure the time of parking, are installed along the curbing, one to each parking space. The motorist who parks in one of these parking spaces is required to deposit in the nearest parking meter a specified coin for a designated period of parking. The deposit of the coin starts operation of the clock mechanism. Each parking meter bears an inscription showing the legal parking time for the zone in which it is situated, and when operated points out by its dial and hand the duration of the period of legal parking, and on the expiration of such period, indicates illegal or overparking.

Under the ordinance, the motorist is required to deposit in the nearest parking meter "a one-cent coin . . . for a period of twelve minutes" when he parks in a parking space in a twelve-minute parking meter zone; "a five-cent coin . . . for a period of one hour, or a one-cent coin . . . for a period of twelve minutes" when he parks in a parking space in a one-hour parking meter zone; and "a five-cent coin . . . for a period of two hours, or a one-cent coin for a period of twenty-four minutes" when he parks in a parking space in a two-hour parking meter zone. The ordinance expressly establishes the rule that the motorist cannot extend the legal parking time set forth above by depositing additional coins in the parking meter. It permits this solitary exception to this rule: The motorist may "deposit, at separate intervals, one-cent coins for a parking period of twelve minutes within a one-hour zone, or twenty-four minutes within a two-hour zone, the aggregate deposit not to exceed two one-cent coins for two such parking periods."

The ordinance specifies that "the proceeds derived from the use of . . . (the) . . . parking meters shall be used exclusively for the purpose of making . . . (the) . . . regulation effective and for the expenses in-

curred by the city . . . in the regulation and limitation of vehicular parking, and traffic relating to such parking, on the streets of . . . (the) . . . city." It provides criminal penalties for its violation.

The defendant was tried and convicted in the City Court of Raleigh upon a criminal complaint and warrant charging that he violated the parking meter ordinance of the City of Raleigh by willfully parking a motor vehicle in a parking space in a one-hour parking meter zone without depositing a coin in the nearest parking meter. He was ordered to pay a nominal fine, and appealed from the judgment imposing it to the Superior Court, where trial was had *de novo* on the original papers.

When the case was heard in the Superior Court, the jury returned a special verdict, which set out in approved form and specific detail facts showing that the defendant deliberately committed all the acts alleged in the criminal complaint and warrant. The trial judge concluded as a matter of law upon the special verdict that the defendant was guilty as charged, and rendered judgment that he pay a fine of $5.00 and the costs. The defendant excepted and appealed, asserting by appropriate assignments of error that the parking meter ordinance of the City of Raleigh and the underlying enabling act contravene the law of the land clause embodied in Article I, Section 17, of the North Carolina Constitution in so far as they undertake to authorize the exaction of a fee or charge for parking on a public street of the city, and that in consequence his conviction and the resultant judgment are void.

It is obvious that the City of Raleigh passed its parking meter ordinance in the exercise of the legislative authority granted to it by the statute now embodied in G.S. 160-200 (31). Manifestly this parking meter ordinance and the underlying enabling act have for their purpose the regulation of vehicular parking, and not the raising of revenue. This being true, they were enacted in the exercise of the police power of the State.

The police power of the State extends not only to regulations promoting public health, public morals, and public safety, but also to those designed to promote public convenience. *Wake Forest v. Medlin,* 199 N.C. 83, 154 S.E. 29. The only limit to its exercise is that regulations must not violate the law of the land clause embodied in Article I, Section 17, of the State Constitution, or any other constitutional provision. *Brewer v. Valk,* 204 N.C. 186, 167 S.E. 638, 87 A.L.R. 237.

To satisfy the law of the land clause, a regulation adopted in the attempted exercise of the State's police power must meet these requirements: (1) The regulation must be established for a purpose falling within the scope of the police power; and (2) the measures sanctioned by the regulation must be *actually* and *reasonably* adapted to accomplish such purpose. *S. v. Ballance,* 229 N.C. 764, 51 S.E. 2d 731, 7 A.L.R. 2d 407.

It is too evident to admit of dispute that the parking meter ordinance and the underlying enabling act fulfill the first requisite of the law of the land clause. Their apparent and avowed purpose is to promote public convenience and public safety in the use of public streets in congested areas. *S. v. Carter,* 205 N.C. 761, 172 S.E. 415; 64 C.J.S., Municipal Corporations, section 1762.

This brings us to the crucial question whether the measures sanctioned by the parking meter ordinance and the enabling statute are *actually* and *reasonably* adapted to promote public convenience and public safety in the use of public streets in congested areas.

Judges are not required by law to be more ignorant than all other men. In consequence, they know judicially that the advent of the motor vehicle has made the regulation of parking in congested areas of our cities and towns a public necessity; that the only available and practical mode of regulation is the imposition of time limits on parking; that attempts to enforce such time limits by means of the "watch and chalk" method used by police officers in making rounds at appointed intervals proves both costly and unsatisfactory; and that coin-operated parking meters afford public authorities an accurate and inexpensive way to time motorists in their parking and thus to avoid overtime parking. *Cassidy v. City of Waterbury,* 130 Conn. 237, 33 A. 2d 142; *Foster's, Inc. v. Boise City,* 63 Idaho 201, 118 P. 2d 721; *People on Complaint of Bergen v. Littman,* 193 Misc. 40, 85 N.Y.S. 2d 48; *Owens v. Owens,* 193 S.C. 260, 8 S.E. 2d 339. The Supreme Court of Washington made these well chosen remarks in declaring parking meters admirably designed to facilitate the enforcement of time limits on parking: "We fail to see what difference it can make to either the traveler on the street or the occupant of abutting property whether the time limitations be enforced by a policeman marking cars with a piece of chalk or by a mechanical device that registers 'Time's up' in a way that all may see. The object of both is to prevent overtime parking, and, of the two, it seems to us that the latter is more effective. With the latter, there are no minutes of grace as there are with the policeman while he is making his rounds 'marking' and 'checking up,' for the time begins to run when the car is parked, and ends when the meter registers 'Time's up.' " *Kimmel v. City of Spokane,* 7 Wash. 2d 372, 109 P. 2d 1069.

The regulations promulgated by the ordinance under the authority of the enabling act classify the congested areas of the City of Raleigh as twelve-minute parking meter zones, one-hour parking meter zones, and two-hour parking meter zones conformable to their respective traffic conditions; impose time limits on the parking of motor vehicles on streets in the areas so classified to meet the respective regulatory requirements of the several zones; establish a coin-operated parking meter system to meas-

ure and mark the time limits so imposed; exact from motorists who park their vehicles on streets in the classified areas a nominal meter fee to cover the expense of maintaining the parking meter system and enforcing parking regulations; and provide criminal penalties for overtime parking and other violations of the regulations.

If a municipality is to regulate the parking of motor vehicles through the agency of parking meters, it must require motorists to deposit coins in them when they exercise the privilege of parking. This is necessarily so for the very simple reason that the parking meters available for use are coin-operated devices. *Gardner v. City of Brunswick,* 197 Ga. 167, 28 S.E. 2d 135; *City of Louisville v. Louisville Automobile Club,* 290 Ky. 241, 160 S.W. 2d 663; *City of Shreveport v. Brister,* 194 La. 615, 194 So. 566; *Wilhoit v. City of Springfield,* 237 Mo. App. 775, 171 S.E. 2d 95; *Owens v. Owens, supra.* The meter fees furnish funds to defray the expenses of maintaining the parking meter system and enforcing parking regulations. The meter fee imposed upon the exercise of the privilege of parking a motor vehicle in a parking meter zone, the necessity of moving a motor vehicle parked in a parking meter zone at the expiration of the time limit on parking, and the fear of suffering criminal penalties for overtime parking in a parking meter zone prompt many motorists to park their vehicles at convenient places outside parking meter zones, and thus reduce substantially the number of motor vehicles seeking parking accommodations on public streets in congested areas embraced in parking meter zones. *Bowers v. City of Muskegon,* 305 Mich. 676, 9 N.W. 2d 889; *Opinion of the Justices,* 94 N.H. 501, 51 A. 2d 836. The same factors hasten the departure of parked vehicles from parking meter zones. *In re Opinion of the Justices,* 297 Mass. 559, 8 N.E. 2d 179; *Gilsey Buildings v. Incorporated Village of Great Neck Plaza,* 170 Misc. 945, 11 N.Y.S. 2d 694, affirmed in 258 App. Div. 901, 16 N.Y.S. 2d 832; *Owens v. Owens, supra.*

These things being true, the exaction of the meter fee and the other measures sanctioned by the parking meter ordinance and the enabling act are *actually* adapted to promote public convenience and public safety in the use of public streets in congested areas. They not only provide the mechanical and financial means essential to the operation and maintenance of the parking meter system and the enforcement of parking regulations, but they also minimize the parking of motor vehicles in the congested areas classified as parking meter zones, prevent the abuse of the privilege of parking by the occupation of the same parking spaces by the same motor vehicles for unreasonable periods of time, distribute the privilege of parking more fairly among the members of the public using streets in such areas, and afford motorists in general better opportunities to transact business with the occupants of property abutting on streets in

such areas. *Andrews v. City of Marion,* 221 Ind. 422, 47 N.E. 2d 968; *Board of Coms'rs of City of Newark v. Local Government Board of N. J.,* 133 N.J.L. 513, 45 A. 2d 139; *Harper v. Wichita Falls* (Tex. Civ. App.), 105 S.W. 2d 743.

The measures are likewise reasonably adapted to accomplish the public good in view. The meter fees are modest in amount. Indeed, they are payable in the two coins of lowest value. Nothing indicates that receipts of meter fees are disproportionate to the expense of maintaining the parking meter system and enforcing parking regulations. *Cassidy v. City of Waterbury, supra; State ex rel. Harkow v. McCarthy,* 126 Fla. 433, 171 So. 314; *Gardner v. City of Brunswick, supra; City of Bloomington v. Wirrick,* 381 Ill. 347, 45 N.E. 2d 852; *Andrews v. City of Marion, supra; City of Louisville v. Louisville Automobile Club, supra; Bowers v. City of Muskegon, supra; Hendricks v. Minneapolis,* 207 Minn. 151, 290 N.W. 428; *Wilhoit v. City of Springfield, supra; City of Columbus v. Ward,* 65 Ohio App. 522, 31 N.E. 2d 142; *Ex Parte Duncan,* 179 Okl. 355, 65 P. 2d 1015; *William Laubach & Sons v. City of Easton,* 347 Pa. 542, 32 A. 2d 881; *Owens v. Owens, supra; Ex parte Harrison,* 135 Tex. Cr. 611, 122 S.W. 2d 314; *Webster County Court v. Roman,* 121 W. Va. 381, 3 S.E. 2d 631. The regulations operate alike on all motorists. They classify congested areas as twelve minute parking meter zones, one-hour parking meter zones, and two-hour parking meter zones conformable to their respective traffic conditions, and establish limits on parking in each zone to satisfy its peculiar regulatory requirements. They set up varying permissible parking periods and corresponding meter fees in one-hour and two-hour parking meter zones so that a motorist who has occasion to park in such zones may select a parking period reasonably suitable for his individual needs and pay no more than his just proportion of the cost of parking regulation.

In reaching the conclusion that the parking meter regulations and the underlying enabling act represent a valid exercise of the police power of the State, I do not overlook the fact that motorists may frequently avoid detection for overtime parking in parking meter zones by the simple expedient of depositing additional coins in parking meters. This fact does not invalidate the parking meter regulations. *Hickey v. Riley,* 177 Or. 321, 162 P. 2d 371. No police regulation could stand if the apprehension of all its violators were a *sine qua non* to its validity.